Pedersen v. Pedersen.

---

SOREN C. PEDERSEN, APPELLEE, v. ANNA M. PEDERSEN, APPELLANT.

FILED NOVEMBER 26, 1910. No. 16,203.

1. Divorce: EXTREME CRUELTY. An accusation made by a wife against her husband in which she charges him with the crime of incest with his daughter may not in all cases constitute such extreme cruelty as will alone furnish him with ground for divorce, but when such accusation is made maliciously and often repeated, together with other conduct showing a fixed purpose on her part to make it impossible for them to live together as husband and wife, it may amount to extreme cruelty.

2. ———: ALIMONY. When a divorce is granted to the husband on any ground except adultery committed by the wife, the court may allow permanent alimony to the wife out of the property of the husband.

3. ———: ———. For the reasons stated in the opinion, the decree is modified so as to allow the wife permanent alimony.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. Affirmed in part and reversed in part, with directions.

Byron G. Burbank, Nelson C. Pratt, McKenzie & Howell and Edward P. Holmes, for appellant.

G. W. Shields and McCoy & Olmstead, contra.

SEDGWICK, J.

A decree of divorce was rendered in the district court for Douglas county in favor of this plaintiff and against the defendant on the ground of extreme cruelty; and the court allowed no permanent alimony to the defendant. The defendant has appealed.

She insists that the evidence is not sufficient to justify the decree of divorce entered against her, and that in any event she should have been allowed permanent alimony, and asks for a decree for separate maintenance.

These parties were each between 50 and 60 years of age, and each had been married before. At the time of their marriage the plaintiff was living upon a farm a few miles from Omaha. He was the father of 10 children by a former marriage; three or four of them were under age, and some of them were living with him upon the farm. The defendant was supporting herself by dressmaking in Florence, a suburb of Omaha. She had no children of her own, but had cared for the children of her former husband with whom she had lived for 25 to 30 years. The petition alleges no act of personal violence on the part of the defendant against the plaintiff, but alleges many circumstances of more or less importance in which he says the defendant acted wilfully and maliciously with the purpose and intent of making his life miserable and with that result. He also alleges that the defendant, while they were living together, accused him of the crime of incest with his own daughter, and at about the time and after their separation repeated this accusation at various times and places and in the presence and hearing of many persons. The defendant admits that she made this accusation against the plaintiff, and says that the circumstances were such that she was justified in believing, and did believe, that the charge was true, and that so far as she published this charge she did so under advice of her counsel and friends and without any malicious motive. A large amount of evidence was taken, much of which seems to

have but little relevancy to the issue being tried. Most of this evidence is apparently ignored in the briefs, reference being made principally to the evidence of the parties themselves.

The duty devolves upon us by the statute to determine these issues *de novo* from the evidence before us. Owing to the condition of this record and the manner in which it is presented, this is a difficult thing to do. At the time of the marriage, which was in July, 1907, there were living with the plaintiff on his farm his daughter, 18 or 20 years of age, and two or three sons who were younger. When the defendant entered this family she found that their habits and mode of living had been entirely different from her own, and, having a quick temper and strong will, she at once inaugurated radical changes which would in most families be thought to improve their condition, but which seem to have been very unacceptable to the plaintiff and his children. The plaintiff testifies that "everything went fine" for 10 or 12 days, and that then the defendant worked to much and was too particular about house cleaning and in arranging the furniture about the house. She put up unnecessary curtains to the windows and made other changes in the domestic affairs, some of them quite radical and unexpected. When the plaintiff objected to these and similar things the defendant was insolent and quarrelsome, and matters became rapidly worse until there was continual quarreling and mutual hatred and abuse. The crisis came in less than three months, when the parties were separated. Then the defendant appeared to be avaricious and demanded large sums of money. It was impossible for these parties to live together, and marriage in this instance certainly was a failure. The characteristics and habits of both parties were such as to make the alliance impossible, and they both contributed to the condition that made the separation unavoidable. The plaintiff was not a man of bad disposition, and appears to have honestly striven to remedy the existing conditions. There is no evidence of viciousness on his part or that he ever at-

tempted to maliciously injure the defendant. The trial court appears to have been satisfied from the evidence that this was not true of the defendant. We think that the evidence justifies the finding that at the time of their separation the defendant determined to extort from the plaintiff as much money as she could, and to drive him to make such a settlement as she desired, and that she was determined to injure him in every way possible. It was with this end in view that she published the charge of incest against him. She insists that she believed that these charges were true, and she may have thought that the conditions were such as to make such a crime possible, but the circumstances show that she was certainly mistaken in her testimony that she upon one occasion witnessed the commission of the crime that she charged, and she does not testify to any facts or circumstances that would indicate that the plaintiff is of the disposition that could make it possible for him to commit such a crime. Her positive testimony that she witnessed the act tends to discredit her evidence, and there can be no doubt that she acted wilfully and maliciously in repeating this charge upon so many occasions and to so many different persons at about the time of their separation. She testifies that while they were living together she tried in every way she could to keep peace in the family and to do her whole duty, and it must be said in her justification that many of her actions that were complained of were to her credit rather than otherwise; but she never hesitated to use the most abusive language to the plaintiff and to his children, sometimes in anger and sometimes with the apparent purpose and intention of accomplishing some desired result. Her counsel contend that the charge of such a crime by the wife against the husband is not of itself sufficient to constitute extreme cruelty; but, if it would not be sufficient in all cases, still, under the circumstances in this case, we think that the trial court did right in so regarding it. It is said in the defendant's brief that, as adultery is a statutory ground for divorce, the accusation of adultery made by the wife

against the husband should never be considered as such extreme cruelty as would justify a divorce upon that ground; and that, as adultery is included in the crime of incest, it follows that an accusation of the latter should not be so regarded. We perhaps do not understand the reasoning of the brief upon this question. It may be that the charge of adultery made by the wife against her husband, even though wilfully and maliciously made, would not in all cases be sufficient of itself to constitute extreme cruelty within the meaning of the statute, but that such an accusation will be a species of cruelty cannot be doubted, and might under some circumstances and conditions be sufficient to constitute extreme cruelty. There can be no accusation that would tend more to bring a man into disgrace with his friends and neighbors than the charge that was made against this plaintiff. It is argued that no conduct will amount to extreme cruelty unless it is shown to affect the life or health of its victim. If physical or bodily health alone is meant, we think that this proposition cannot be sustained. Our statute provides that extreme cruelty is a ground for divorce, whether practiced by personal violence or other means. Cruelty, other than by personal violence, must operate upon the mind, and the legislature must have assumed that extreme cruelty might operate upon the mind and feelings alone.

The finding that the defendant was not entitled to permanent alimony we think is not supported by the evidence. The plaintiff has 228 acres of land near Omaha which is divided into two farms and fairly well improved, and 80 acres of land near Anselmo, this state. He also has some money loaned and in the banks and owns some corporate stock. The evidence is meager as to the value of the plaintiff's property. The defendant testified that at one time the plaintiff told her that his farm near Omaha was worth $50,000. This the plaintiff denies, but when upon the witness stand he refused to testify as to the value of the farm, stating that he did not know how much it was worth. The evidence that he produced from other witnesses would

place the value of this farm at $95 to $100 an acre, while the evidence produced by the plaintiff would place its value at about $150 an acre. The value of the plaintiff's property is evidently somewhere from $30,000 to $40,000. At the time of the marriage the defendant had some property, consisting of three or four lots and a building which was incumbered, and the evidence in regard to her property is also unsatisfactory. Her real estate, if clear of incumbrances, would probably be valued at about $3,500. It appears that she is somewhat in debt and has a very small income, and the stated sums which she received from a part of this property which she has recently sold are applied upon an indebtedness. It also appears that at the time of the marriage she was engaged in the dressmaking business, which was fairly remunerative and furnished her a substantial living, and that by this marriage her business was broken up, and that her income at the time of the trial was not sufficient for her support. The plaintiff has paid something toward her expenses in this litigation, probably somewhat less than $1,000 in all, and has incurred a considerable expense in his own behalf. The defendant has not benefited him in any way financially, and undoubtedly should not recover a large amount of alimony. The plaintiff's counsel insist that the defendant should not be allowed alimony when the divorce is granted on account of her misconduct, but this is not the rule. The statute expressly allows alimony in favor of the wife in all cases except in case the divorce is granted on account of adultery committed by the wife, and this court has many times allowed such alimony. The defendant should not be placed in a worse condition financially than she was at the time of her marriage, and we think she ought to be allowed the further sum of $2,000 for her alimony and attorney's fees, payable: $500 upon the entering of this decree in the district court, $500 six months, and $1,000 one year, thereafter, and that the plaintiff should pay all the costs in these proceedings.

The judgment of the district court disallowing alimony

is reversed, and in all other things affirmed; and the cause is remanded, with directions to enter a decree for alimony in accordance with this opinion.

JUDGMENT ACCORDINGLY.

FAWCETT and ROSE, JJ., not sitting.