E. E. MITCHELL, Appellant, v. JESSIE A. MITCHELL, Appellee.

DIVORCE: Grounds—Change of Domicile and Desertion. Evidence
1    tending to show that a husband changed his domicile from a distant state to this state, and that the parties had thereafter largely lived apart by agreement, reviewed, and held to establish desertion on the part of the wife.

DIVORCE: Alimony to Guilty Party. Alimony may be granted to the
2    guilty party in divorce proceedings. Allowance of $7,500 out of a net wealth of $50,000 reviewed, and reduced to $3,000, in view of former allowances.

DIVORCE: Excessive Attorney Fees. An allowance of attorney fees
3    in the sum of $1,000 in nonintricate divorce proceedings reviewed, and held excessive, and reduced to $500 for such fees in both the trial and appellate courts.

*Appeal from Mahaska District Court.*—CHARLES A. DEWEY, Judge.

NOVEMBER 15, 1921.

REHEARING DENIED FEBRUARY 17, 1922.

ACTION for divorce. The defendant filed a cross-petition. The trial court dismissed the defendant's cross-petition and granted the plaintiff a divorce, and awarded the defendant alimony and attorneys' fees. The plaintiff appeals from the decree, in so far as the same awards alimony to the defendant. The defendant files a cross-appeal. Plaintiff, having perfected

his appeal first, will be referred to hereafter as the ''appellant,'' and the defendant, as the ''appellee.''—*Modified and affirmed.*

*L. T. Shangle, Burrell & Devitt,* and *D. C. Waggoner,* for appellant.

*Reynolds & Orvis, J. C. Heitsman,* and *A. H. Bell,* for appellee.

FAVILLE, J.—The appellant filed his petition for divorce on the ground of desertion. The appellee filed a cross-petition, praying for a divorce from appellant on the ground of deser-

1. DIVORCE: grounds: change of domicile and desertion.

tion, cruel and inhuman treatment, and adultery. The court granted a divorce to the appellant, and dismissed the appellee's cross-petition, and by decree awarded alimony to the appellee in the sum of $7,500, expenses in the sum of $288, and attorneys' fees in the sum of $1,000. Appellant appeals from so much of the decree as awards alimony to the appellee. Appellee contends that she should have been granted a divorce from the appellant upon her cross-appeal, and that, in any event, the award of alimony is inadequate.

I. We will first consider the question raised by appellee's cross-appeal, as to whether or not the appellant should have been granted a divorce, and whether or not it was error to deny appellee a divorce on her cross-bill. The case has been before this court before, on an appeal from an order allowing temporary alimony. *Mitchell v. Mitchell,* 188 Iowa 490.

It appears that, at the time of the marriage of these parties, the appellee was past thirty years of age, and the appellant was about four years older. They were married on April 4, 1900, at Camden, New Jersey. At said time, both of the parties were employed in the government printing office at Washington, D. C. After the marriage, the parties lived together as husband and wife in Washington, and occupied the positions they had previously held with the government. The appellee retained her maiden name of Jessie Burritt at all times after the marriage. In 1903, the appellant's father died in the state of Iowa, leaving considerable property. The appellant was appointed administrator of his estate, and, about September, 1906,

came to Iowa and remained until March, 1910. During this time, the appellee continued her employment in the printing office. The appellant made a trip to Washington in 1910, where he remained for a comparatively short time, and returned to Iowa, and has remained in this state ever since. In the intervening years, the appellee continued to work in the printing office at Washington, and the appellant lived upon a farm of 119 acres, which he had inherited from his father. During all this period of time, the appellant contributed very little to the support of the appellee. The parties seem to have gone their respective ways, without opposition or protest. The appellee came to Iowa in March, 1917, and immediately instituted an action against the appellant for a divorce. This action she afterwards dismissed. In September, 1918, the appellant instituted this cause.

Neither of these parties was altogether free from blame that they did not sail the sea of matrimony without shipwreck. The voyage was started with the abnormal and unusual arrangement by which the appellee retained her maiden name, and passed herself off as a single woman, although maintaining marital relations with the appellant. It also appears that, after his return to Iowa, the appellant likewise posed as a single person. The marriage was not carried out by these parties in accordance with the ideals that usually surround the marriage relation, and it is not to be wondered at that it resulted in suspicions and separation, criminations and recriminations.

We shall not attempt to set out all of the details of the testimony offered in evidence by the respective parties on this question. It would serve no useful purpose to the parties or to the profession so to do.

With regard to the appellee's cross-appeal, we find no sufficient evidence in the record to support the allegations of her cross-petition. There is no proof that would warrant the court in decreeing the appellee a divorce on the grounds of desertion. Appellant came to Iowa from Washington with the knowledge, consent, and apparent approval and acquiescence of the appellee. Notwithstanding all the manifold changes that have been made by statutory enactment and judicial pronouncement respecting the relations of husband and wife, it still remains the law that

the husband is the "head of the household," nominally at least, and has the right to fix and choose the domicile. Appellant did not desert the appellee, in coming to Iowa and establishing a home here.

There is also failure on the part of the appellee to establish by the evidence any such cruel and inhuman treatment on the part of the appellant as meets the requirement in this state that the same must tend to impair her health and endanger her life. The charge of adultery is largely predicated upon the fact that the appellee found a certain letter, addressed to the appellant, which, by reason of its signature, is referred to in the record as the "Emma" letter. This was found by the appellee some time in 1905 or 1906. Of itself, such letter, written by a third party, is wholly insufficient to support the charge of adultery; and even if it were positive proof, it was afterward condoned by the appellee by her continued cohabitation with appellant. The court was right in dismissing appellee's cross-bill.

In regard to appellant's case, it is the contention of the appellee that the evidence fails to show desertion by appellee, and that the court erred in granting appellant a divorce. From and after March, 1910, the appellant has made his home in Mahaska County, Iowa. The correspondence between the parties was infrequent, desultory, and lacking in affection and mutuality of interest. The appellant was by no means fair, frank, and open in what little correspondence he had with the appellee, nor can it be said that the appellee excelled the appellant in this respect. There was some correspondence between the parties relative to a house that appellant was building. It appears that appellant sent the appellee some plans for a house, and in March, 1912, the appellee wrote the appellant in regard thereto, and said:

"In conclusion, I have only to say that I have lost all interest in the subject. You can put the parlor down in the cellar and the cellar on the roof if you want to."

On January 18, 1915, the appellant wrote the appellee as follows:

"I wrote two letters to you about two years ago, that the house was ready to live in and that I was living there alone or in substance to that effect. So far to my knowledge you have

disdained to answer. I have been living or baching it along the best I could ever since. You knew all the time that whenever you wanted to come and act like a woman ought to, the door was open."

No answer was ever received to this letter, and in 1917, the appellee came to Iowa, and instituted the suit which she subsequently voluntarily dismissed.

It is argued strenuously by counsel for appellee that the letter of January 18, 1915, was a "made-to-order letter," and was not written in good faith by the appellant. It is established that the letter was received by the appellee, and never until the trial of her action did she make any reply thereto, or attempt to impeach the good faith of the appellant in writing the same. It is strenuously argued that the appellant did not, by said letter or otherwise, send the appellee money with which to come from Washington to Iowa, nor did he offer so to do; but, on the other hand, the appellee did not express any willingness to come to Iowa, or suggest in any way that she was lacking in funds with which to make the trip or that she would come if funds were furnished her by the appellant.

We think the court was justified, under the evidence, in awarding the appellant a decree of divorce from the appellee on the grounds of desertion.

II. It is the contention of appellant that the court should have refused any alimony to appellee, because the appellant was granted the divorce, and appellee was adjudged to be the "guilty party." Appellant relies upon the provisions of Code Section 3181. Said section provides:

2. DIVORCE: alimony to guilty party.

"When a divorce is decreed the guilty party forfeits all rights acquired by the marriage."

Appellant's contention is that the language of this section of the statute precludes an award of alimony to a "guilty party," against whom a decree of divorce is obtained.

Section 3181 must be read in connection with the preceding Section 3180, which is as follows:

"When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right. Subsequent changes may

be made by it in these respects, when circumstances render them expedient.''

While the precise question presented by appellant in regard to the construction of these two sections of the statute has apparently not been presented before to this court, we have recognized the right of the guilty party to be awarded alimony, where the circumstances of the case warranted it. We do not think that Section 3181 has reference to the granting of alimony upon the trial of a divorce action. The provisions of this section with reference to the forfeiture of all rights acquired by the marriage have no reference whatever to the rights that are preserved by the very decree of divorce. Section 3180 provides for the granting of a divorce, and for a decree in relation to the children and property. These rights are not forfeited by the granting of the decree, but are the very rights fixed, settled, and determined between the parties by the decree of divorce. Section 3181 was not intended to prohibit the award of alimony to a guilty party at the time of the granting of the decree of divorce. It has nothing to do with the ''rights'' fixed by the decree, under Section 3180.

Nothing in *Hamilton v. McNeill*, 150 Iowa 470, militates against this conclusion. In said action, we considered said Section 3181 and said:

''Under other sections of the statute, the questions of alimony and the custody of children are questions to be determined by the court in each given case.''

This statute first appeared in Territorial Laws, Section 6, Chapter 65, Blue Book of 1843. It appeared in the Code of 1851 as Section 1486. It did not appear in the Revision of 1860, but was placed in the Code of 1873 as Section 2230, since which time it has remained as the law. During the time the statute has been in force, we have repeatedly recognized that alimony could be awarded to a guilty party in a divorce action. See *McCraney v. McCraney*, 5 Iowa 232; *Dupont v. Dupont*, 10 Iowa 112; *Fivecoat v. Fivecoat*, 32 Iowa 198; *Barnes v. Barnes*, 59 Iowa 456; *Coulthard v. Coulthard*, 91 Iowa 742; *McDonald v. McDonald*, 117 Iowa 307; *Zuver v. Zuver*, 36 Iowa 190; *Abel v. Abel*, 89 Iowa 300; *Leupold v. Leupold*, 164 Iowa 595.

In some of these cases, alimony was denied to the guilty party, particularly in cases where the divorce was granted be-

cause of adultery. See *Abel v. Abel,* supra; *Fivecoat v. Fivecoat,* supra. But none of our cases deny the power of the court to award alimony to a guilty party in a proper case, and others expressly recognize it. If Section 3181 prohibits such award, it has never been so construed, for the something like three quarters of a century that it has been the law in this state. We do not think that a fair construction of said section, in the light of the provisions of Section 3180, is that it creates a prohibition on the power of the court to award alimony, in a proper case, to a guilty party. The general rule seems to be that, in the absence of any statute authorizing the court so to do, permanent alimony will not be awarded a wife when a decree of divorce is rendered against her. We think Section 3180 obviates this rule of the common law. A similar statute has been enacted in many of the states. Where such a statute has been enacted, it seems to be the uniform holding that the court has power to grant permanent alimony to a wife when she is the guilty party and a divorce is granted to the husband. *Vigil v. Vigil,* 49 Colo. 156 (111 Pac. 833); *Pedersen v. Pedersen,* 88 Neb. 55 (128 N. W. 649); *Pryor v. Pryor,* 88 Ark. 302 (114 S. W. 700); *Reavis v. Reavis,* 2 Ill. 242; *Deenis v. Deenis,* 79 Ill. 74; *Coon v. Coon,* 26 Ind. 189; *Janvrin v. Janvrin,* 59 N. H. 23; *Graves v. Graves,* 108 Mass. 314; *Lofvander v. Lofvander,* 146 Mich. 370 (109 N. W. 662); *Dickerson v. Dickerson,* 26 Neb. 318 (42 N. W. 9); *Newsome v. Newsome,* 95 Ky. 383 (25 S. W. 878); *Reynolds v. Reynolds,* 92 Mich. 104 (52 N. W. 295).

We do not think that Section 3181 is inconsistent with Section 3180, or that it is meant to be a limitation upon the power of the court to award alimony to the guilty party, in a proper case. The rights forfeited by the guilty party under Section 3181 do not include the right to alimony that may be awarded at the time of granting of divorce, under the provisions of Section 3180.

It is further argued by the appellant, however, that, in construing Section 3180, even if the court has the power to make an award of alimony to the guilty party, the property referred to in Section 3180 is the "joint property:" that is to say, the accumulations of the husband and wife by reason of their joint efforts during the time of marriage, no matter in whose name

the title may stand.   There is nothing in the language of Section 3180 warranting any such construction or limitation.   It is proper for the court, in awarding alimony, to take into consideration the amount of the joint accumulations or earnings of the parties, as well as other facts; but there is nothing in the provisions of Section 3180 that limits the award of alimony to the "joint accumulations" of the husband and wife.

Upon this branch of the case, we hold that, under the provisions of our statute, the court has the power, upon the granting of a divorce, to award alimony to the guilty party, in a proper case.   It therefore follows that, in the instant case, where the husband obtained a divorce on the ground of desertion, the court was not in error, as a matter of law, in awarding alimony to the wife, even though the alimony could not be paid out of any joint earnings or joint accumulations of the husband and wife, but would be paid by the husband out of his separate estate.

III.   The next question for our consideration is whether or not, under the facts and circumstances disclosed in the instant case, the court was in error and abused its discretion in awarding alimony to the wife, and whether the amount awarded is excessive.

In determining whether or not the court, in its discretion, should award the wife alimony where the divorce was granted against her, the court should take into consideration many facts and circumstances surrounding the parties.   It is proper for the court to consider the grounds upon which the divorce was granted.   By the statutes of some of the states, it is provided that the erring wife can in no event be awarded alimony if she has been guilty of adultery, and in states where there is no such statute, the uniform and general practice is that the court, in its discretion, will not award alimony to a wife who has been guilty of adultery.   We have no such statutory provision, but the rule has been recognized by this court.   *Abel v. Abel*, supra; *Leupold v. Leupold*, supra.

The court should also take into consideration the matter of the conduct of the successful party, and even though a divorce has been granted, whether the successful party has been altogether free from blame. . The sex, age, health, earning power,

and future prospects of the parties are to be considered. The amount of joint or accumulating property, if any, should be taken into consideration; the private estate of each; whether or not there are children to be provided for; the earning capacity of each party; the income and indebtedness of each party; and all of the facts and circumstances that will enable the court to arrive at a just, fair, and equitable decision in the matter.

It appears from the evidence that neither of these parties has accumulated any appreciable amount of property from their own efforts. Each has been the beneficiary of the labor and accumulation of others. The appellee has acquired property in the city of Washington by inheritance, and the appellant's estate consists almost wholly of property which he has inherited from his father. The furniture and effects which the parties had at the time the appellant came to Iowa were left with the appellee, but they were rather inconsequential, and of small value. At the time he came to Iowa, appellant left the appellee money then in the bank in Washington, amounting to about $170. The appellee testified that she owns property in the city of Washington; that she did not know its worth; but that it was assessed at $1,100; and that said property brings her in a small monthly rental. What relation the assessed value bears to the actual value was not disclosed in the record. The appellee also testified that her income from all sources since she quit the printing office is about $35 a month.

It appears that the appellant owns a farm which, at the time of the trial, in July, 1920, was conceded to be worth about $48,000. This is the property which he inherited. It also appears that he held a mortgage against his brother of $7,500, and had bank stock of $1,000 par value. He also had some personal property, consisting of stock and grain. It is difficult from the testimony to arrive at a definite and specific determination of the net worth of the appellant at the time of the trial. He estimated his indebtedness as between $6,000 and $7,000. We think it may fairly be said from the evidence that, at the time of the trial, the appellant's net worth was somewhere in the neighborhood of $50,000.

Referring to some of the other matters that are proper to take into consideration in connection with the awarding of ali-

mony, it appears from the record that the appellant is a man about 57 years of age, in good health, and with good earning capacity. He has attended to the care and management of the farm that he inherited from his father, has accumulated some personal property in the intervening years, and has had time to devote his attention to other matters somewhat, having been elected to the state senate of Iowa. The appellee, it appears, is about four years his junior, and is not in good health, although, until about the time of the trial, she had been employed for many years in the government printing office.

In the suit that was brought by the appellee in 1917, she received an allowance of $500. In the instant case, she was allowed and paid $100 for her support and $300 for suit money and attorneys' fees. A further allowance was made, which, on appeal to this court, was reversed. By the decree entered herein, appellee is allowed $1,000 as attorneys' fees, and appellee now asks an allowance of an additional sum for attorneys' fees for presentation of the cause in this court. We are inclined to think that the allowance of $1,000 for attorneys' fees, in addition to the previous amount that had been allowed in the trial for attorneys' fees and suit money in this case was, under the circumstances, an excessive allowance. The case was not an intricate one, nor was the trial prolonged. The award for attorneys' fees of $1,000 in the final decree was, in our judgment, too large an amount. It will be reduced to $500, and no additional award will be made for the services of appellee's attorneys in this court.

**3. DIVORCE: excessive attorney fees.**

With regard to the allowance for permanent alimony, the court awarded the appellee $7,500 and $288 in addition, for expenses incurred by her. We are disposed to hold that, although the wife was the guilty party, and the decree of divorce was granted in appellant's favor and against her, on the grounds of desertion, this is a case wherein it is proper for the court to award alimony to the party against whom the decree of divorce was rendered. We have set out in this opinion enough of the evidence in the case to indicate in a general way the situation in respect to these parties and their property. Although the appellant obtained the divorce from his wife on the grounds of desertion, we are inclined to the opinion that he is not alto-

gether free from fault in the failure of the strange and un-natural marriage entered into between these parties. Neither one has displayed toward the other that degree of affection, consideration, and respect that should characterize the marriage relation. Neither one is without fault. The appellant is a man of considerable means, with no one dependent upon him. He took this woman as his wife, under the unusual conditions in which they both acquiesced. True, she has not helped to earn the property that he has inherited, and the comparatively small accumulations he has added thereto. She has brought him little, either in the way of consortium or of contribution toward the accumulation of material goods. On the other hand, the appellee has supported herself, while his wife, for many years, with practically no contribution on his part. She has now reached the time of life when her earning capacity is necessarily decreased, and when her health is not good. She is entitled, under all of the circumstances of this case, to a fair and reasonable allowance as alimony from her husband's estate. She has no one dependent upon her. If the appellant were the guilty party, and appellee had been awarded a divorce against him, she would have been entitled to a more substantial award for alimony than in a case where she is the guilty party and the husband obtains a divorce from her on the grounds of desertion. In view of the amount that has been allowed heretofore to the appellee, and considering that the divorce was obtained by the appellant from her, and in view of all of the other facts and circumstances in regard to the parties, as shown by the record, we think that this allowance for permanent alimony was excessive, and that it should not exceed the sum of $3,000, and $288 for expenses, allowed by the trial court. The costs in this court will be taxed to the appellant.

The decree of the lower court will be modified to the extent herein indicated, and otherwise will be affirmed. It is so ordered.—*Modified and affirmed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.