ROBERT O. BURGHARDT, Appellant, v. THURZA BURGHARDT, Appellee.

No. 40195.

MARCH 18, 1930.

*Baker, Doran & Boone* and *O. C. Bauch,* for appellant.

*Guy A. Miller,* for appellee.

ALBERT, J.—I. Plaintiff and defendant were married on the 22d day of September, 1927, at Morrison, Illinois, plaintiff, at the time, being 78, and the defendant about 40 years of age. The statement of their ages portends the picture of their married life. Each had previously ventured on the sea of matrimony, the plaintiff's wife having died 'some 16 years before, and the defendant having divorced her husband. Under the testimony in the case, this marriage was one of conventional convenience on one side and financial convenience on the other, and, as would be expected, the record is quite replete with crimination and recrimination. It takes little imagination to anticipate the picture in this case, covering the history of the relation between these two parties. A detail of the evidence is hardly necessary, some of it being unprintable; and, as each case must rest on its own facts, an elaboration of the record would be of no use to the litigants or to the profession. We have carefully studied the record, and are quite satisfied with the decision of the lower court, and we will only briefly outline this record.

The early life history of the plaintiff is not in the record. He was a coal miner by occupation, and apparently had accumulated nothing in the way of this world's goods until about 1924, when a sister, by the name of Carrie V. Burghardt, died, leaving an estate to her two brothers, one of whom was the plaintiff; and he received as his share of her estate something between $55,000 and $60,000. The evidence of the witnesses, and also the record in the case, show that he had no business capacity and no proper idea of the handling of funds of this amount. After the death of his sister, plaintiff lived at Batavia, Illinois, for some time, and in 1925, he created a trust, naming Otto Herman, of Boone, as trustee, placing in his hands the sum of

$31,000. This was a part of the funds received from his sister's estate.

The defendant was divorced from her prior husband in 1919 or 1920. She had two children, who lived with her at all times from the time of the divorce until the trial of the present case, the son being 20 years of age and the daughter 18, at that time. She was at one time engaged in the real estate business in Denver, and later in Des Moines, was an employee of the Red Cross for a time, and also was employed as a hostess at the Fort Des Moines Hotel. She later became interested in one of the fads of the day, known as a "flesh reducer," and she bought a formula thereof from one Evelyn Byers, for the sum of $10,000, mostly on credit, and was engaged in the business of manufacturing and disposing of this remedy at the time she first became acquainted with the plaintiff, in April, 1926, at the Kirkwood Hotel in Des Moines, where he was then residing. She approached him with a proposition of establishing a beauty parlor in Des Moines; and, suffice it to say, after some negotiations, he was induced to furnish to the defendant $3,000 as an investment in a proposed beauty parlor, which was later to be established. He paid this money to the defendant in two checks, of $1,500 each; and the business was launched, at an expense, under the defendant's own testimony, of not to exceed an investment of $200. This business was run for six months, the total income therefrom during that time being $27.50. Aside from this, the plaintiff paid something like $600 rent for the rooms occupied for the beauty parlor, and at least a part of the time, he paid the help employed therein. The business was then closed, and the furniture and fixtures taken over by the defendant.

On the failure of the beauty parlor business, the defendant proposed that they enter into an enterprise for manufacturing and selling the flesh reducer, and the plaintiff expended $1,150 for an automobile for the defendant to use, and advanced her $400 in cash, to start on this enterprise.

Prior to this time the defendant had been advising the plaintiff that there was a large amount of assets belonging to the estate of Carrie V. Burghardt that had not been accounted for, and she entered into a written contract with him that she would investigate these unaccounted-for assets, and that she was

to have 50 per cent of all that was realized therefrom. She claims to have gone over the records in various counties of the state, looking up these matters, and reported to the plaintiff that from $100,000 to $300,000 undisposed-of assets belonged to said estate; and she claimed that, up until the time she and the plaintiff became separated, she was devoting a part of her time to looking up these assets. Whether or not any such assets in fact existed or were discovered is not very clear in the record. At least the record does not show that anything was ever realized therefrom.

In October, 1926, the plaintiff went to Illinois, and invested $7,500 in a piece of town property; and while he was there, the man who was administrator of the Carrie V. Burghardt estate made application for the appointment of a conservator of the property of the plaintiff, on the grounds that he was a spendthrift. A hearing was had on October 8th of that year, and such conservator was appointed.

From time to time, the plaintiff continued to furnish the defendant various sums of money, never realizing anything from his investments with her; and, as heretofore stated, they were married on September 22, 1927.

Each insists strenuously that the other proposed the marriage, and both concede that no love or affection existed. After the marriage, the defendant seems to have taken charge of the financial situation of the plaintiff, and through her efforts, the conservatorship in Illinois was closed, and the funds in the hands of the conservator were turned back. Later, there seems to have been dissatisfaction over the conduct of the trusteeship at Boone, and Rolfe O. Wagner, a Des Moines banker, was appointed guardian, and the trusteed property was turned over to him. To accomplish all of these purposes, the plaintiff paid out about $4,000 in attorney fees to various attorneys connected therewith.

After their marriage, the parties lived in various apartments in the city of Des Moines, and the grown children of the defendant became members of the family, without expense to them. On application to the district court, the guardian was authorized to pay over certain monthly installments for the support of the ward and his wife, paying the sum of $125 per month, which was later increased, by order of court, to $155 per

month. The evidence shows that this money all went into the hands of the defendant, except a mere pittance, which was received each month by the plaintiff. Through the various mutations, and also the depreciation in the value of the property and the assets of the estate, the amount in the hands of the guardian was reduced to something over $18,000.

The grounds of the divorce were cruel and inhuman treatment. Without detailing the evidence, suffice it to say that we find that the record contains sufficient evidence to warrant the decree of the district court granting the divorce. This evidence comes from persons who were in intimate touch with the family affairs of the plaintiff and the defendant, and who were wholly disinterested herein. We think the court was right in granting the divorce.

II. In the decree of the lower court, the defendant's attorney was awarded $800 for attorney fees for defending the case, and the costs were taxed to the plaintiff; and from this award the plaintiff appeals, on the ground that such amount is excessive.

We have before us the exhaustive record in this case, and judging therefrom and from our knowledge of the work necessary in the preparation of this case, we are contented with the award made by the district court as to attorney fees.

There was submitted to this court an application for attorney fees for defendant's attorney for preparation of the submission of the case in this court, and also for allowance for the support of the wife, pending this litigation. The court made an order allowing the defendant $50 a month during the pendency of this litigation, and ordered the question of the attorney fees on this appeal submitted with the case. We therefore have before us the question of the amount of attorney fees that should be allowed the defendant's attorney for the presentation of this case in this court. We feel that, in view of the liberal allowance made for services in the district court, the defendant's attorney should be allowed $200 for his services in this court; and it is so ordered.

One other question is raised that deserves attention. While the district court granted the plaintiff the divorce, as prayed, the costs of the trial were taxed against the plaintiff. The well settled rule of law in this state, under the statute, is that, when

1176

the plaintiff wins, the costs should be taxed against the defendant. We know of no exceptions to this rule, and the court therefore erred in taxing costs of the trial in the district court to the plaintiff. It should have taxed the costs of the trial in the district court against the defendant, and it is hereby so ordered. See Section 11622, Code, 1927.

With this modification, the case is affirmed on both appeals.—*Modified and affirmed on both appeals.*

MORLING, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.