JEANETTE S. JOHNSON, appellant, v. JOHN H. JOHNSON, appellee and cross-appellant.

No. 47445.

(Reported in 39 N.W. 2d 310)

OCTOBER 18, 1949.

SUPPLEMENTAL OPINION AND REHEARING DENIED

DECEMBER 16, 1949.

Burt & Prichard, of Emmetsburg, for appellant.

130

Arthur W. Smith, of Emmetsburg, and Herrick & Langdon, of Des Moines, for appellee and cross-appellant.

HALE, J.—In these appeals plaintiff will be considered as appellant, and defendant as appellee.

The plaintiff, Jeanette S. Johnson, seeks divorce with alimony from her husband on the ground of cruel and inhuman treatment, and the husband in his cross-petition seeks divorce from the plaintiff on the same grounds. The parties have been residents of the Mallard community in Palo Alto County for many years. They were married March 6, 1937, and lived together as husband and wife, except for a temporary separation in 1946, until August 24, 1947. There are no children, and they occupied and lived upon, as a home, the husband's eighty-acre farm until sometime in the Fall of 1945. This farm had been given to the defendant by his father.

It was in the Fall of 1945 that, at the request of plaintiff, a café business was purchased in the town of Mallard, with the funds therefor furnished by the defendant. When they moved to town to live plaintiff operated the café and defendant continued to carry on the farm operations, but lived in town. Plaintiff sold the café at a loss, after operating it about a year, and used most of the money from such sale to purchase furniture. The parties thereafter occupied a private home at Mallard and did not move back to the farm. The plaintiff started working for her parents—her father owning and operating a restaurant.

Plaintiff makes no complaint of the conduct of the defendant until sometime in 1945; that at about that time he began his cruel and inhuman treatment toward her up and until the time they separated in 1947. In general she alleges that this form of treatment consisted of the use of profanity toward her in the presence of others, calling her obscene names and accusing her of infidelity, but no claim that she was physically abused. She testified that she and her husband got along—what she called "good"—until just about two years before the trial, and she testified to his cursing her and calling her things she "didn't think he should have." Most of her testimony is very general and not specific. As she terms it, his accusations were her flirting with salesmen and being in love with others, and that he told

her several times that he did not love her. She told of one particularly obscene expression, which was denied by the defendant. She spoke of his coming into the café on the night of August 23, 1947, "accusing me of not giving him his supper," and that he then started cursing her and "told me I thought more of other people than I did of him." She complains of defendant speeding on the way to Emmetsburg and driving dangerously. Following this time she stated that she left her husband on the next morning. In general she testified to a deterioration of her health as to being more nervous, and that defendant's conduct interfered with her work in her father's café and caused her to cry, but when away from her husband that condition did not exist.

At the time plaintiff left the defendant they had two automobiles—a model A Ford and a 1946 Chevrolet. When she left she took the Chevrolet, which was afterwards replevined by the defendant. She testified that it was worth about $1000; that they had paid $1200 for it.

Other testimony given by plaintiff was her opinion of the value of the farm and the personal property thereof; the details of their separation in 1946—her reason being that "we just didn't get along;" that she had been sick and out home for a couple of weeks. At that time she packed his clothes and left them at the door of their home. She testified that he never struck her and she was never in fear of her life.

There was a great deal of testimony as to her life in the country on the farm, where she was dissatisfied; that it was her idea to buy the café; that her husband borrowed $2500 or $2700, the cost of the café, and $500 more for her when she got behind in the business; that her husband had nothing to do with the operation of the restaurant except that he got his meals there and "his spending money"; that the restaurant was unprofitable and that she sold it at a loss. After she left him in August 1947 she went back and got all the furniture.

Called as a witness was a Mrs. William Moley, living at Hampton, but who had been employed in the plaintiff's restaurant from March 4 until July 30, 1946, and who seems to have been a willing witness. She testified extensively to misconduct of the defendant; that he (the defendant) would always curse and call his wife names, but she never heard him use the vile expression

testified to by the wife but one time. She states that he did other cursing both at his wife and things in general at other times, and this witness attributed the wife's nervous condition, which she testified to, as resulting from the cursing of her husband. Of course, this testimony was general. She testified that the conduct of plaintiff was regular, that is, presumably, continuous. She emphatically said he would never speak to his wife as he ought to, he always had to fuss about everything and cursed his wife practically every time he appeared.

Mrs. Melvin Johnson, plaintiff's mother, testified also, but somewhat reluctantly, to altercations and words between her daughter and defendant, and his use of bad language on at least one occasion; that he was addicted to the use of profane and obscene language in the presence of customers, and as to one complaint of defendant that everybody else was fed before him. She said that all the trouble of her daughter and son-in-law had come up since "they came in the restaurant"; that John, the defendant, had always been good to "us folks" (meaning his wife's folks); that there was nothing out of the way around their place; that John got his wife everything that she wanted and she did not complain about anything.

Witnesses testified that defendant had accused his wife of improper conduct. This is strenuously denied by him.

We have set out, perhaps to a greater extent than was necessary, the substance of the testimony of various witnesses, mainly to show the value or lack of value of a great deal of the testimony. The case seems to have been built up largely upon the foundation of the use of vile, insulting and obscene language, some of which is so disgusting that it hardly seems probable it would be used by any normal person. We do not find that there is a lack of corroboration, although such corroboration, if there was such in regard to the use of the language, is somewhat doubtful. It would seem that if such conduct took place it would not have escaped the attention of the employees of the café, other than Mrs. Moley. The attempted corroboration by the wife's mother is not strong, and, on the whole, the district court was right in disregarding a large part of the testimony, especially the attempted corroboration.

For the defendant there was testimony of numerous witnesses including Mrs. Henry White of Mallard, their landlady

after the sale of the café. She testified that the first she knew of their separation was when the wife came back to the house and got her clothes, and still later came and got all the furniture. This was in the absence of the husband. Mrs. White testified that defendant never spoke harshly to his wife but was kind and thoughtful, would bring her breakfast to her, most always on Sunday morning, and other mornings besides. There was no running water upstairs and he would carry it up to her. So far as the witness knew they got along all right, just a normal couple living together. From everything she observed he was a kind and thoughtful husband. The husband and wife were only there a year, just before their final separation.

Various neighbors living near the parties testified that they had observed the relation of the parties hereto, and had associated with them more or less intimately and never had heard any cross words or seen any misconduct; that plaintiff and defendant visited at the neighbors' homes and others visited them. William Teyen, a near neighbor, testified to a trip the two families made together, and, in general, the good conduct of the defendant. One neighbor testified that he knew of the wife taking the furniture out of the place and that the defendant was greatly grieved; that the defendant took his wife with him when he would go places and offered to take her to other places; that they would go together considerably (this witness lived twenty-two years on the place adjoining defendant's farm); that the wife took care of the house and the chickens and the work she had to do around the farm; that there was no misconduct on the husband's part. A number of employees of the restaurant also testified they never heard defendant say or do the things he is accused of.

The defendant testified as to the financial matters connected with the purchase of the restaurant and his indebtedness on mortgage to the bank for the purchase price; that he turned the restaurant over to his wife, who operated it, although he sometimes helped with the work; that he paid the indebtedness. He testified further as to her taking the furniture from the farm, the separation in 1946, and the reconciliation; denied cursing and the use of the words attributed to him by plaintiff's witnesses, or driving recklessly as described by his wife. He complained of

his wife's neglect, and her taking possession of the Chevrolet car. He further denied accusing his wife of improper conduct.

Other testimony was given as to the value of the farm, but, as usual, witnesses vary greatly in their estimates. It would appear from all the testimony to be worth $190 to $200 per acre, encumbered as heretofore stated.

The substance of defendant's cross-petition, some of which has heretofore been referred to, alleges plaintiff purchased the café business over his objections with considerable expense to him, but the evidence does not so indicate but does show that whether he approved of the purchase of the café or not he made no objection and voluntarily furnished the money. Defendant's cross-petition further alleges that plaintiff invited defendant to leave by placing his clothing at the front door of their living quarters. At the time they finally separated defendant alleges that plaintiff deserted him, taking with her all the household goods and equipment. This is true, but the district court held, and we also find, that it does not at present warrant a divorce and is not cruel and inhuman treatment. In his cross-petition defendant further complains of a charge in plaintiff's substituted petition of impotency. This, however, was struck out by the court and no attempt made in the testimony to substantiate the charge. The only reference thereto made by the defendant was a denial.

We agree with the district court that the defendant failed to establish cruel and inhuman treatment such as to endanger his life. The cross-petition was properly dismissed.

An order for costs was made in the decree in the district court taxing the costs of plaintiff's witnesses to her, and costs of defendant's witnesses to said defendant, and the balance of the costs equally between the two parties. We confirm the order and hold that the decree of the district court is correct and should be affirmed.—Affirmed.

All JUSTICES concur.

### SUPPLEMENTAL OPINION

PER CURIAM.—Petition for rehearing is denied but the opinion is modified with respect to the allowance of attorney's fees as herein provided.

The record shows that due application was made in the trial court, and likewise in this court, for the allowance of attorney's fees for plaintiff's attorney. The record further shows that plaintiff's attorney not only prosecuted her original action, but also successfully defended against defendant's cross-petition and defendant's appeal in this court.

The original opinion filed herein is therefore modified to the extent that there shall be allowed as fees to plaintiff's attorney the sum of $300, and judgment shall be rendered in the trial court against the defendant in accordance herewith.