JENETTE A. SIMPSON, appellee, v. WYATT E. SIMPSON, appellant.

No. 48793.

(Reported in 74 N.W.2d 582)

FEBRUARY 7, 1956.

Jones, Cambridge & Carl, of Atlantic, for appellant.

Turner & Turner, of Avoca, for appellee.

SMITH, J.—Plaintiff, then approximately 34, and defendant, 46 years old, were married March 8, 1947, in Kansas City, Kansas. It was defendant's first marriage but plaintiff had apparently had considerable marital experience with three former husbands and numerous divorces and remarriages.

Plaintiff had and has but one child, a married daughter by a former marriage. This daughter, who worked in the railroad office in Little Rock, Arkansas, introduced her mother to defendant.

Defendant is an employee of the Rock Island Railroad Company in the engineering department. After their marriage the parties soon moved back to Little Rock. They later lived in Chicago for a time before coming to Atlantic, Iowa. The changes in locale were due to changes in defendant's place of work.

The details of their married life are not too important here as there is no appeal from the divorce itself. The record is very complete however. Defendant was granted the divorce on his cross-petition. The decree, as originally rendered June 20, 1953, awarded plaintiff "the bonds, furniture and Kaiser-Frazer automobile now in the possession of plaintiff", the sum of $2000 cash, $75 per month for two years commencing July 1, 1953, and costs. There had been a preliminary order in February 1953, for temporary support and attorney fees. The temporary order was for $200 per month, the temporary attorney fee $75.

After the decree in June the case was, on defendant's initiative, reopened and in effect a new trial granted on the issue of property award; an official certified list from government bond records was obtained showing the issuance and redemption of bonds to or in the names of the parties and plaintiff's mother and daughter. It revealed that plaintiff had been something less than frank as to her own holdings.

Eventually (on July 26, a year later) an additional or modified decree was entered. The court found there were outstanding at the time of the original trial and "belonging to the plaintiff" Savings Bonds "of the face value of $7250 payable to the plaintiff as the first-named payee thereon"; also that at the time of the marriage plaintiff "was the owner of certain real estate and personal property which has, as to the greater part thereof, been converted to cash and commingled with the marital assets."

The principal change decreed was a reduction of the cash award from $2000 to $1000 "in addition to, and in excess of, all sums heretofore having been paid by the defendant." The two-year monthly $75 payment was discontinued. Defendant was decreed to pay costs but each was to pay his own attorney fees.

Defendant appeals, but of course complains only of the property provisions; and plaintiff seems content to be branded as the party in fault ("cruel and inhuman treatment") so long as there is a divorce.

■ I. It must be conceded our court is committed to the rule that a wife may be awarded alimony even though the husband wins the divorce. Dunham v. Dunham, 244 Iowa 214, 56 N.W.2d 606, and cases cited. The rule was early recognized in Barnes v. Barnes, 59 Iowa 456, 458, 13 N.W. 441, but was not applied there, the opinion saying: "Alimony is rarely and only under peculiar circumstances granted to the party in fault, even when that party is the wife."

It must be conceded there are "peculiarities" here, but we have trouble finding in them any very cogent reason for applying the rule in plaintiff's favor. We must, of course, consider the comparative financial situations of the parties as well as their respective physical conditions and earning capacities.

II. Plaintiff, now 42 or 43 years old, is still approximately twelve years younger than defendant. She was a working woman when married, not lacking in business sagacity, judging by her own testimony. She already owned a house in Little Rock when she married defendant and had "six rooms of furniture * * * fairly new." She describes an imposing list of her household possessions: "We didn't buy anything when we got married except about six dish towels." She says that during their married

life she handled all the family finances. All defendant did, apparently, was earn them.

The only medical testimony in the record is that of an Atlantic doctor. He found plaintiff was nervous and put her on a stomach ulcer diet and administered tablets. He expresses no opinion as to the seriousness or permanence of her condition. There is nothing to indicate any unusual decline in either her health or her earning capacity during her five- or six-year married life with defendant.

The record concerning their respective bond holdings is somewhat beclouded, partly by reason of plaintiff's own reticence as a witness. The official certified list as of July 10, 1953, shows outstanding bonds payable to plaintiff (first named) or her daughter, $5675, and to plaintiff (first named) or defendant, $1425. It shows those payable to defendant or his sister $5300 and to defendant or plaintiff $125. The decree as finally amended gave plaintiff those "now in the possession of the plaintiff" as her "absolute property."

Of course defendant's salary has increased as he gained experience in service. We find no substantial evidence to support the argument that plaintiff was largely responsible for its increase.

There is nothing to indicate defendant has any income-producing property other than his government bond holdings. The record is also silent as to his health and we must assume he is in about the usual "mid-fifty" condition in that respect.

We realize, on the other hand, that defendant has employment while plaintiff must seek it; that she faces—or has already faced—some readjustment of her mode of life, while re-establishing herself as an earner.

We are not disposed to review the record with a view of determining which party is "at fault" for the breakup of marital ties. The trial court has determined that and neither party has appealed that decision.

III.   We have read the Iowa cases involving the award of alimony to wives against whom decree of divorce has been granted. Our rule in such cases may not be the majority rule. But it is in line with our statute and there seems no equitable or humane reason or basis for change.

550

It should however be administered sanely and with due regard to the facts of each case as it arises. In Mitchell v. Mitchell, 193 Iowa 153, 185 N.W. 62, the trial court allowed $7500 out of a net wealth of $50,000. We reduced the allowance to $3000 after a thorough consideration of the entire record. In the case of Blain v. Blain, 200 Iowa 910, 912, 205 N.W. 785, 786, after a review of the decisions we concluded the matter "is largely a discretionary matter · with the court" and reduced a $5000 allowance to $1200.

We conclude here defendant should not be required to pay cash alimony or plaintiff's printing costs but should in fairness bear the other costs of appeal. The decree should be and is hereby modified accordingly.

Plaintiff's application for allowance of her attorney fees on appeal is denied.—Modified and affirmed.

All JUSTICES concur.