WANDALENE J. ANDREESEN, appellee, v. ROBERT H. ANDREESEN, appellant.

No. 50239.

(Reported in 110 N.W.2d 275)

AUGUST 15, 1961.

Warren J. Rees, of Rees, Remley & Heiserman, of Anamosa, for appellant.

L. G. Klein, of Iowa City, for appellee.

PER CURIAM—The principal question on this appeal is the right to custody of the only child of the marriage, born March 24, 1956. On September 17, 1960, the trial court denied plaintiff-wife a divorce, granted one to defendant-husband on his amended cross-petition alleging desertion, and awarded plaintiff custody of the little girl, alimony and support money. Defendant has appealed but of course does not challenge his right to a divorce.

Plaintiff and defendant were married at Lisbon, Iowa, September 21, 1954, and lived together on a 160-acre farm owned by defendant's father until July 6, 1958. Plaintiff had been married twice before, defendant once. Plaintiff's first marriage was soon annulled and she was granted a divorce from her second husband. Defendant's first wife obtained a divorce from him about a year after the marriage. A boy, Allen, was

born to plaintiff's second marriage. He was ten at the time of trial in September 1960. Plaintiff was then 32, defendant 34. The boy has always made his home with his mother, including the time she lived with defendant. It is agreed he is a good boy and poses no disciplinary problem.

Plaintiff commenced the present action August 26, 1959. In the preceding 13 months three other actions were instituted involving marital differences of the parties. Plaintiff started the first and third of these, asking separate maintenance. The husband (defendant herein) brought the second action—for divorce. The wife (plaintiff herein) then cross-petitioned for separate maintenance. The three previous suits were dismissed without trial.

I. About three weeks before trial of the present action the trial judge suggested that each party be examined by a psychiatrist who should report to him. The parties agreed to the suggestion and six days later a psychiatrist made his examination and written report to the judge. The psychiatrist found defendant normal but that plaintiff was an epileptic with psychosis (paranoid) whose answers to questions were often irrelevant. She charged her husband (defendant) was living with another woman and was a homosexual. The psychiatrist orally informed the judge that while plaintiff was mentally ill she was not dangerous, knew the difference between right and wrong, and was able to proceed with the trial.

Plaintiff has been an epileptic since she was ten. Defendant knew this when they were married. Plaintiff's last convulsion was in June 1958, more than two years before the trial. The little girl was then two. Plaintiff has evidently succeeded in keeping her epilepsy pretty well under control. Defendant testified the fact plaintiff was an epileptic had no effect on the marriage. We think the fact is entitled to little consideration upon the question of child custody. But this cannot be said of plaintiff's mental illness.

Plaintiff and defendant seemed to live together happily until July 6, 1958. Relations between plaintiff and defendant's parents were also congenial. Defendant and his parents became attached to the little boy, Allen. Defendant had no com-

plaint as to the way in which plaintiff cared for the home and the little girl, Sheryl. In February 1958 plaintiff had "the flu," was run down and lost weight. Defendant engaged a Mrs. Nowachek to help with the housework two days. The mother of each party also helped for a time.

Defendant testified he came in from the field at his father's other farm on July 6, 1958, and found plaintiff, with Sheryl, all excited. Defendant's father said she was upset and hysterical. Plaintiff wanted to take the family car and the children and drive to her mother's farm home. Defendant testified he opposed this because plaintiff was emotionally upset. Defendant telephoned her sister to come and take plaintiff to her mother's farm home for a few days rest. Plaintiff and Allen stayed with her mother until August 16. Plaintiff then returned to defendant's home with him and they spent the night together. The next day she wanted to return to her mother's. Defendant testified he could not persuade her to stay with him and returned her to the mother's farm home. The separation has been permanent.

Plaintiff did not take the little girl with her. She stayed temporarily with defendant's mother but has been with defendant most of the time on the farm he rents from his father. Defendant said plaintiff did not object to leaving Sheryl with his parents although she had wanted to take the child with her.

Just what precipitated the separation of this couple, who had apparently lived together happily until then, is not clear. There is evidence defendant's sister-in-law engaged in an argument with plaintiff and told her she was becoming mentally ill. Also that plaintiff feared defendant would send her to "an asylum." Plaintiff testified to some brutal treatment from defendant at the time of the separation and there is some corroboration of this from her mother. Plaintiff insisted defendant "kicked her out." Defendant denied these charges and testified he made repeated attempts at reconciliation.

The trial court found Sheryl's welfare will be best served by placing her in plaintiff's custody, that plaintiff is an attractive lady, neat and clean in appearance, a high-school graduate with some college education, a former country schoolteacher

of good moral character who has done an excellent job raising her son, Allen. The findings and decree do not mention the matter of plaintiff's mental illness.

It appears Sheryl has lived with defendant since her parents separated except for temporary periods with defendant's parents. This seems partly because of defendant's desire to keep the child and partly because of temporary custodial orders during the course of the litigation. Some members of this court ordered enforcement of the custodial provisions of the decree stayed pending outcome of this appeal. Thus the fact the child has remained with defendant is not entirely of plaintiff's choosing.

II. In defense of the custodial provisions of the decree plaintiff relies on three propositions so well settled as not to require citations for their support. First, we give weight to the trial court's findings in matters of this kind because of his better opportunities to weigh the testimony. Indeed several of our decisions say such findings are entitled to much weight. Blundi v. Blundi, 243 Iowa 1219, 1226, 55 N.W.2d 239, 243; McKay v. Ruffcorn, 247 Iowa 195, 198, 73 N.W.2d 78, 80. This last statement, however, seems too strong in view of our duty to review the case de novo.

It is also true, as plaintiff says, the question of child custody is addressed to the sound discretion of the trial court. Voy v. Voy, 241 Iowa 673, 676, 41 N.W.2d 869, 870, and citations; Patzner v. Patzner, 250 Iowa 155, 162, 163, 93 N.W.2d 55, 59, and citations.

The other proposition referred to is that the mother is ordinarily best suited to care for a child of tender age, especially a little girl. Some cases say there is a presumption that, save in exceptional cases, the mother is best fitted to care for children of tender years. Citations last above, also Blundi v. Blundi, supra, 243 Iowa 1219, 1230, 55 N.W.2d 239, 245.

However, we have said: "Furthermore, there is no hard and fast rule as to which parent or other person should be awarded the custody of children. Each case must be judged on its own facts. [citations] The presumption, if it be such, in favor of a mother of young children * * * is resorted to

merely to aid the court in a particular case to determine what is for the best interests of the children. No one should be awarded the custody of children where their welfare will be served by placing them with another custodian." Maron v. Maron, 238 Iowa 587, 592, 28 N.W.2d 17, 19, 20. See also Stillmunkes v. Stillmunkes, 245 Iowa 1082, 1086, 65 N.W.2d 366, 369.

Defendant's main contentions are that plaintiff abandoned the child, she is unfit to have custody because she is a paranoid psychotic and defendant is a fit and proper custodian.

We have already referred to the fact plaintiff did not take Sheryl with her when the couple separated and stated our conclusion that defendant's keeping her was not entirely of plaintiff's choosing. It is true there is some force to the argument that if, as the court found, plaintiff deserted defendant she abandoned the little girl.

■■ III. What convinces us it is unwise for plaintiff to have the little girl is her mental illness. That she is the unfortunate, and doubtless unknowing, victim of paranoia with its accompanying delusions there is little doubt. It is probable the illness has progressed since the trial. Plaintiff would perhaps keep the child clean and supply her other physical wants better than defendant. However, the almost certain detrimental effect of plaintiff's mental illness upon Sheryl's mentality and personality persuades us her welfare will be best served by leaving her with defendant at least until such time, if ever, as the illness is successfully treated. It is hoped much needed treatment may be supplied. There is little doubt too that if plaintiff, in her present mental condition, had the child she would try to encourage in her a feeling of antipathy toward defendant.

It is best not to refer in detail to the evidence of plaintiff's mental condition. She seems to be furthest from normal on sexual matters. She believes defendant and his father have sexually molested the child and she will become a prostitute. She charged defendant with taking down Allen's pants and being a sex fiend. She referred to Mrs. Nowachek, a widowed grandmother who kept house for defendant about 4½ months,

as an "old slut" and accused defendant of improper conduct with her. She charged defendant gave Sheryl liquor and narcotics and Allen whiskey. Plaintiff testified she believed such of these accusations as she was asked about were true. The trial court found it is evident the accusations were unwarranted but were made under much strain and agitation.

We seem never to have considered the effect of a parent's mental illness upon the question of child custody. It is clear it is a factor to be considered along with others in determining which parent's custody will probably best serve the child's interests. Annotation, 74 A. L. R.2d 1073, 1075. Defendant cites these precedents where the wife's mental condition resembled plaintiff's condition here: Bowler v. Bowler, 355 Mich. 686, 96 N.W.2d 129, 74 A. L. R.2d 1068; Stoll v. Stoll, 243 Minn. 510, 68 N.W.2d 367; Atkinson v. Atkinson, 38 Wash.2d 769, 231 P.2d 641. These decisions and others recognize it is unwise for a child to be placed with a parent whose mental condition is similar to plaintiff's here.

IV. Unless the parties can agree on plaintiff's right to visit Sheryl it seems best for the trial court to hear and determine the question. It is hoped the parties and their counsel will make every effort to reach such an agreement, subject to the trial court's approval. Plaintiff should have reasonable visitation privileges, probably about once a month, unless—as is entirely possible—this would not be conducive to the welfare of the child or of plaintiff herself.

This much we know—if visitation rights are allowed plaintiff, the time, place and extent of the visits must be definitely fixed and the terms agreed upon or ordered by the court must be carefully observed. Otherwise the right of visitation will be a source of much controversy.

The judge who was assigned to hear the case is asked to consider the approval of any agreement regarding visitation rights which may be submitted to him or, upon application of either party, hear and determine such rights, and in any event to enter a decree in harmony with this opinion. Jackson v. Jackson, 248 Iowa 1365, 1376, 85 N.W.2d 590, 597, is somewhat in point on the disposition we make of the question of visitation.

V. The trial court ordered defendant to pay plaintiff $1223.38 as the value of livestock and increases therefrom and cash which plaintiff furnished defendant at the time of the marriage, also $75 a month as alimony and a like sum for Sheryl's support. In the event of plaintiff's remarriage the alimony payments were to cease. Plaintiff was also awarded certain personal property other than livestock which was hers when she married defendant and was still in his possession. Defendant contends these awards are excessive.

Since defendant has had the child's custody and under our decision is entitled to it in the future, the payments for Sheryl's support should be canceled. We think the award of $1223.38 proper. Plaintiff furnished defendant $100 and seven head of livestock at the time of the marriage. Two were pure-bred Swiss cows. The value of the livestock as found by the court does not seem excessive. A fair approximation is all that can be hoped for. Plaintiff should also be entitled to the return of her personal property. It is worth much more to her than to anyone else.

The court found defendant's net worth was between $6000 and $6500. Defendant says it did not exceed $5800. Plaintiff testified she had no income other than that received from defendant and was not gainfully employed. However, she did some work around the community and helped with the chores on her mother's farm. The medicine for her epileptic condition costs about $15 a month. It is clear plaintiff could easily use the alimony the court allowed her. During the nearly four years the parties lived together plaintiff faithfully performed the duties of a wife and mother and helped with farm chores.

Under all the circumstances, including the relatively short duration of the marriage, we feel monthly payments of $75 as alimony should terminate at the end of five years from the date of the trial court's decree, or on September 17, 1965. Such payments should also terminate in the event of plaintiff's remarriage prior to said date.

We need not repeat what we have said several times are matters to be considered in dividing property and awarding alimony in divorce cases. See Alberhasky v. Alberhasky, 250

Iowa 986, 1001, 97 N.W.2d 914, 924, and citations; Rider v. Rider, 251 Iowa 1388, 1390, 1391, 105 N.W.2d 508, 510, and citations; Rasmussen v. Rasmussen, 252 Iowa 414, 423, 107 N.W.2d 114, 119.

█ We are committed to the rule a wife, in the court's discretion, may be awarded alimony even though the husband is granted the divorce and have said this is in line with our statute, section 598.14, Code, 1958. Dunham v. Dunham, 244 Iowa 214, 216, 56 N.W.2d 606, 608, and citations; Nelson v. Nelson, 246 Iowa 760, 768, 68 N.W.2d 746, 751, and citations; Simpson v. Simpson, 247 Iowa 546, 548, 74 N.W.2d 582, 583, 584. We have so held where the husband won the divorce on the ground of desertion. Mitchell v. Mitchell, 193 Iowa 153, 185 N.W. 62.

For the practice in other jurisdictions in allowing alimony to a wife against whom a divorce has been granted see Alldredge v. Alldredge, 119 Utah 504, 229 P.2d 681, 34 A. L. R.2d 305, 310, 311, and annotation, 313, 330–333. In Larson v. Larson, 2 Ill.2d 451, 118 N.E.2d 433, 434, 43 A. L. R.2d 1384, 1387, alimony was allowed a wife against whom a divorce was granted because of desertion.

VI. During the pendency of defendant's appeal plaintiff filed in this court her application for temporary alimony, attorney fees and other relief. The application was orally submitted to the entire court. It was then ordered in part that defendant should pay plaintiff's attorney, L. G. Klein, $200 to apply upon his fees for services upon this appeal, "Final disposition of the matter of attorney fees to be made when the appeal is decided." Mr. Klein did not represent plaintiff upon the trial but has represented her upon the appeal.

We think additional fees of $300 to Mr. Klein should be taxed to defendant. We are satisfied he has earned at least the total amount allowed. There is little doubt that in a proper case we may allow a wife attorney fees for services upon appeal from a divorce decree, especially where the husband appeals, even though she is not entirely successful in the ultimate decision. If this were not the rule the wife's rights might not be adequately protected.

See in connection with what is just said Jackson v. Jackson, supra, 248 Iowa 1365, 1376, 1377, 85 N.W.2d 590, 597; Renze v. Renze, 247 Iowa 25, 31, 32, 72 N.W.2d 490, 493; Johnson v. Johnson, 241 Iowa 129, 134, 135, 39 N.W.2d 310, 313; Burghardt v. Burghardt, 209 Iowa 1171, 1175, 229 N.W. 761; Mitchell v. Mitchell, supra, 193 Iowa 153, 162, 163, 185 N.W. 62; Mengel v. Mengel, 157 Iowa 630, 646, 647, 138 N.W. 495; annotations, 18 A. L. R. 1494, 1505-7; 136 A. L. R. 502; 2 A. L. R.2d 307, 339; 17 Am. Jur., Divorce and Separation, sections 644, 645; 27A C. J. S., Divorce, section 221h, pages 957-964 ("Usually, the right to counsel fees on appeal does not depend upon the outcome of the appeal * * *" page 960).

Our order, previously referred to, required defendant to pay for printing plaintiff's brief and argument ($43), one third the remaining costs of the appeal are taxed to defendant, two thirds to plaintiff.—Reversed and remanded.