BOWLER *v.* BOWLER.

1. DIVORCE—MODIFICATION OF DECREE—CHANGE OF CUSTODY—EVIDENCE—MENTAL ILLNESS—VISITATION.

A change of custody of 3 children, now 15, 10 and 9 years of age, from mother to father on latter's petition for modification of decree of divorce *held,* amply sustained, under evidence showing the father had been flatly refused the visitation rights accorded him by the original decree and recurrence of mother's mental illness of "schizophrenia, paranoid type, chronic, active."

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 17A Am Jur, Divorce and Separation § 837 *et seq.*

2. SAME—MODIFICATION OF DECREE—CUSTODY OF CHILDREN—MENTAL ILLNESS—EVIDENCE—PSYCHIATRISTS.

It was not error for trial court to grant custody of 3 children to husband on his petition for modification of decree of divorce, notwithstanding testimony on behalf of wife disputing testimony of husband's 3 psychiatrists that the wife suffered from mental illness characterized as "schizophrenia, paranoid type, chronic, active."

3. SAME—VISITATION—MENTAL ILLNESS.

Insofar as trial court's action constituted a denial of right of visitation of mother to her 3 children, 15, 10 and 9 years of age, as sought by her petition to modify decree awarding sole custody to husband, it was proper, where 3 psychiatrists characterized her mental illness as "schizophrenia, paranoid type, chronic, active" and 2 of them indicated she should be in a mental institution, it being for the best interests of the children that she not visit them for the duration of her illness.

4. SAME—COSTS—MODIFICATION OF DECREE—CUSTODY OF CHILDREN.

No costs are allowed on affirmance of trial court's order granting custody of 3 children to father on his petition for modification of decree of divorce.

Appeal from Wayne; Ferguson (Frank B.), J. Submitted January 9, 1959. (Docket No. 45, Calendar No. 47,777.) Decided April 13, 1959.

Bill by Eleanor Bowler against William C. Bowler resulted in decree of divorce which was subsequently modified on petition of defendant. Upon appeal cause was remanded for further proceedings. Petition granted and decree modified granting defendant custody of children. Plaintiff appeals. Affirmed.

*Henry Thumin* (*Meyer Weisenfeld,* of counsel), for plaintiff.

*Anthony G. Jeffries,* for defendant.

VOELKER, J. This sad case is still another chapter in a prolonged dispute over the custody of 3 minor children originally awarded the plaintiff mother and

present appellant by decree in her ultimately uncontested divorce action against the defendant father and present appellee. By inference it appears that the children are now at least 15, 10 and 9 years of age.* The original decree was entered during March, 1955, by the present chancellor. The father was there given certain weekly visitation privileges. Thereafter in October of that year he filed a petition to modify the original decree by seeking sole custody in himself, alleging in substance that the mother had wrongfully refused to abide by the visitation privileges provided in the decree and, moreover, that since the decree she had become mentally ill and was therefore an improper person to continue to have custody.

A hearing on this petition to modify filed by the father was had before the same chancellor who granted the original divorce decree awarding custody to the mother. Thereafter during February, 1956, the court entered an order granting the prayer of the father's petition to modify, thereby changing the original decree so as to award exclusive custody of the children to the petitioning father. No right of visitation was there accorded the mother. The mother thereupon appealed to this Court where the order changing custody to the father was vacated and the cause remanded to the trial level for further proceedings, all of which appears in detail in our decision in *Bowler* v. *Bowler,* 351 Mich 398.

It should further be noted that the above appeal was decided by us on March 5, 1958, and that pending the perfection of her appeal in that case the mother on February 1, 1957, filed a petition for visitation privileges in the lower court, of which more presently. We further note that the father has had con-

---

* The record unfortunately does not disclose the exact birthdays of the children, a lapse we recommend be corrected in all future cases of this nature.

tinuous physical custody of the children since the modifying order of February, 1956 (vacated in *Bowler*), and that the mother has not visited or seen them from that time up to the time of submission to us of this present appeal.

We said and held in the *Bowler Case, supra,* that the testimony bearing on the mother's claimed unfitness should have been heard by the chancellor himself instead of being based so largely on a hearing before a referee and various absentee reports and conflicting letters of certain psychiatrists not heard or taken before the chancellor, and that therefore the evidentiary record before him and us was inadequate to support his action in thus changing custody to the father. As just noted, we there vacated the order amending the decree (staying its effectiveness for 30 days) and remanded the proceedings on the husband's petition to modify "for further proceedings  *  *  *  in accordance with this opinion." (*Bowler* v. *Bowler, supra,* p 408.)

Following such remand the same chancellor, with the agreement and participation of counsel, promptly proceeded to conduct in open court a full-dress rehearing of the father's original petition to modify, all as suggested in our opinion. At the outset of the rehearing the chancellor announced from the bench that he would at the same time also hear the mother's pending and still unheard and undisposed of petition for visitation, above noted. Following extensive hearing before him the chancellor once again modified the original decree so as to grant custody to the father, then and there reserving action on requested visitation by the mother. This further appeal by the mother has resulted.

On rehearing, the big issue before the chancellor, as it is before us, was whether there had been a sufficient change in circumstances since the original decree to warrant his granting the father's petition

praying for a change of custody. This in turn resolves itself, in this case, to a question of whether the mother was mentally fit to continue to have the children. On this issue the chancellor heard in open court the testimony of numerous witnesses, including that of 4 expert medical witnesses trained in psychiatry. All 4 appear to be experienced practitioners of impressive training and background, one, a woman doctor, called by the mother and 3 by the father. All were examined and cross-examined extensively. The medical witness called on behalf of the mother may fairly be said to have testified to the end that in her opinion the mother should retain custody, although on cross-examination she testified that the appellant mother showed "traces" of paranoid complexes.

The other 3 doctors testified without equivocation that from their examination of Mrs. Bowler they found she was suffering from a grave mental illness which they more or less uniformly diagnosed, as one of them put it, as "schizophrenia, paranoid type, chronic, active." At least 2 of them felt that she should be in a mental institution.* One of the doctors told the court of the "devastating" effect that exposure of growing children to such an afflicted parent could have on them, not only in the present but in the unpredictable future; another testified that "It is never to the best interests of anyone to be in the custody of somebody who is mentally ill;" and one medical witness, who appears to have seen the mother most recently, flatly recommended against granting the mother visitation, for her sake as well as the children's. In addition an investigator from the office of the friend of the court recounted a conversation with Mrs. Bowler during which the latter

---

* Counsel in his brief at several places states that 3 doctors so felt, but chose not to cite us to the pages in the appendices to support this assertion, as required by our rules, and we finally wearied of continuing to do his work for him.

informed the investigator with apparent seriousness that she (Mrs. Bowler) was an electronic genius and that all the radio and television stores knew her because they saw and talked to her every time she turned on her set. We gather that that is an almost classic sympton of the precise mental disease found by the 3 doctors.

The father testified, in substance, that the mother had previously had intermittent mental spells, going back to 1952, but each time had recovered, and that at the time of the divorce she appeared to him entirely normal, hence his withdrawal of contest; and that his subsequent petition to modify had been precipitated by a telephone call from the mother's maid concerning certain recent peculiar actions of the mother and the maid's consequent apprehension and concern over the children. On this last point the former maid testified below to the same effect.

The chancellor's careful opinion recounts most of the foregoing and points out that he had no inkling of any history or hint of mental illness when, almost as a matter of course, he granted custody to the mother in the original decree. He also noted, and this is supported by the record, that during the last hearing, here appealed from, he talked to each of the 3 children in chambers (the conversation was recorded) and all had said they were happy where they were and wanted to remain with their father.

The record also discloses certain accompanying economic realities in this situation, namely, that following the divorce the mother had sold the home then awarded her, along with the furnishings, and had since spent most of the money she received therefor in desultory and aimless travel in the West, and, at the time of the last hearing, was unemployed and living in a furnished flat with 2 widows.

Appellant raises 3 questions on appeal. The first is that the chancellor erred in changing custody

based upon the father's petition to modify "based solely on the refusal of the wife to let the husband see the children." This question grossly misstates the facts; the petition to modify which was remanded in *Bowler* and reheard below plainly stated in addition that the petitioner (who was barred by her from seeing the children) was fearful that the mother "has had another mental breakdown and is in urgent need of hospitalization and psychiatric treatment and that she is therefore in no condition to have the care, custody and control of the 3 minor children, and that the said 3 minor children should be placed under his care, custody and control."

As we observed in the earlier *Bowler Case* (pp 405, 406), counsel is correct in asserting that failure of the mother to permit visitation would not in itself necessarily warrant a change in custody, but in the context of the present situation we nevertheless think it is of some importance as possibly showing changed circumstances, that is, a changed mental state, and, equally important, as perhaps demonstrating the unwisdom of committing these children to a gravely sick mother who, in open contempt of the original decree, refused flatly to let the only other person who cared (and fortunately there is such a person in this case) to occasionally come and see the children and check up on the situation. The proofs amply sustain the allegations of the petition. This ground is, therefore, without merit.

The second ground, as we follow it, is that the court erred in granting custody to the father where there was disputed medical testimony. To thus baldly state the question is to answer it. We are aware of no rule of law, nor are we cited one, that ties the hands of a chancellor because of a dispute in medical testimony. If we did know of any such rule we would promptly write to overrule it. Opposed testimony of friends and former neighbors (appar-

ently also depended upon by appellant) as to their past observations of the kindliness and maternal attributes and good character of Mrs. Bowler, however important in the usual case, were of but passing moment in the particular circumstances of this case; these attributes were not disputed nor in issue and, if anything, only tend to make this case more pitiable. The raising of young children is a 24-hour proposition, 7 days a week, year in and year out, and in these situations the passing observations of lay witnesses made during the subject's lucid intervals (apparently one of the strange phenomena of this grave mental sickness) may not challenge the clear, careful, and detached testimony of 3 reputable psychiatrists. The chancellor below, himself, made it plain that if it were not for the mother's mental state he would gladly and without hesitation have restored her to actual as well as legal custody of the children. This second ground is also without merit.

The third and perhaps most disturbing ground of claimed error is the court's refusal to grant visitation rights to the mother at the time of or following his latest order (here appealed from) granting the father's petition to modify the original decree as to custody. This result was doubtless a harsh blow to the distracted mother and probably gave nobody much joy, least of all the chancellor. Yet if Mrs. Bowler was as gravely mentally ill as the medical witnesses below testified, we think it was a commendable act of charity and mercy on the part of the chancellor not to expose either her or the children to the mutually shattering distress and scalding of emotions that would inevitably follow if the children were obliged periodically to confront their mother (and she them) while thus afflicted. An already sad situation is never improved by making it sadder.

In the case of *Gardner* v. *Gardner*, 239 Mich 306, we held that a mother who was committed to a men-

tal institution could properly be denied custody. In a later appeal in another phase of the same case, in *Gardner* v. *Gardner*, 249 Mich 498, we affirmed a subsequent modification of the decree denying her continued visitation as well. That this present appellant is not in such an institution (despite the noted recommendation made in some of the medical testimony given below) cannot change the picture. In fact professionally unregulated visitation in these circumstances, or lack of someone qualified to warn the children or their father against a projected visit during an inopportune time, could well be even more painful for all concerned.

While we do not consider that the question of visitation is technically properly before us (since vision has apparently never been formally denied), so that there may be no misunderstanding on the subject we hold that to the extent the court's action below constituted a denial of visitation (as urged by appellant) rather than a reservation of decision on the mother's petition for visitation (as we see it), it is hereby affirmed.

These contested child-custody cases are never easy, and this case is no exception. From the nature of such disputes, involving as they do one of the basic instincts and great primal urges of human existence, whichever way judges rule is bound to leave a trail of heartache and pain. But decide them we must, for it is our job; and in our considered judgment the earnest chancellor in this melancholy case did the only safe and sensible thing he possibly could have done on the testimony before him. Indeed we might well have felt disposed to question his decision had he done anything else. However painful it may be to separate a good mother from her children in these harrowing circumstances, judges have no right to sentimentalize or flinch in these situations, much less experiment or take risks

with the children involved. Even were there any real doubt as to the best course to follow (and here we think there was none), that doubt must be resolved in favor of the safest course for the good of the children, to the extent that it is given to frail mankind, including judges, to discern that course.

Perhaps we can relieve somewhat the undeniable harshness of this result by pointing out that if in the happy event the mother should measurably improve, or recover entirely, we discern nothing to prevent her from later calling up or renewing her petition for visitation, or indeed filing an appropriate petition for the return of custody. On the record presently before us we feel obliged, however painfully, to affirm the result reached below. No costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.