JAMES S. McKAY, appellee, v. DORIS E. McKAY, appellant.

No. 50522.

MAY 8, 1962.

Fitzgibbons & Fitzgibbons, Fillenwarth & Fillenwarth and Wm. S. Johnston, all of Estherville, for appellant.

Daniel D. Sanderson and Rosendahl & Forsyth, all of Estherville, for appellee.

THORNTON, J.—James S. McKay, 30 years old at the time of trial, November 1, 1960, brought this action seeking a divorce on the ground of cruel and inhuman treatment. His wife, Doris E. McKay, 31 years old, filed a cross-petition asking for a divorce on the same grounds. Doris was granted the divorce. The custody of the two children of the parties, Joan, born April 11, 1952, and Ralph, born August 7, 1953, was awarded to James. Visitation rights were granted to Doris at reasonable times. The home of the parties was ordered sold and after the payment of liens

the proceeds of the sale are to be divided equally. James was ordered to pay the costs including an additional attorney fee for Doris' counsel in the sum of $750. In the decree the trial court specifically retained jurisdiction to make further orders in the future as to custodial and visitation rights. This decree was filed December 21, 1960. On December 30, 1960, Doris filed her application asking the court to clarify her right of visitation. This was done after hearing, by a supplemental decree filed January 18, 1961, providing the children could be with their mother every third weekend from Friday evening to Sunday evening starting January 20, 1961, and providing the mother could have the children with her during the month of June, for the parties to have the children in alternating years on birthdays and Christmas week and ordering James to pay $100 through the clerk's office for the support of the children during the month of June.

Defendant, Doris, appeals, urging custody of the children should have been awarded to her and she should have been awarded adequate alimony and child support, title to the home, the household goods, and personal property. And she asks a further award of attorney fees for services of her counsel in this court.

I. The parties were married February 25, 1951. They lived next door to plaintiff's mother until 1956. They then moved to another home some distance away, but in the same city, Estherville. This move was prompted by defendant's feeling her mother-in-law was intruding too much in their affairs. After the birth of the youngest child, Ralph, in 1953, defendant's health started to fail, just when is not clear. However, it was such that in the spring of 1956, she, accompanied by plaintiff, voluntarily went to the Mental Health Institute for care and treatment as an outpatient. At that time her condition was diagnosed by Dr. Fanny T. Ginzberg, M.D., a Fellow of The American Psychiatric Association, Assistant Superintendent of the Cherokee Mental Health Institute, as incipient schizophrenic reaction of the chronic undifferentiated type. She was described as extremely anxious, somewhat depressed, not able to handle her everyday work, having difficulty in sleeping, difficulties in or-

ganizing her work, feeling at times despondent, and having many different fears. She continued as an outpatient to January of 1957, when she entered the Institute as an inpatient, she received shock treatments and medication. In October 1957 she was released and returned home. In the first part of December 1957 defendant returned to the Institute as an inpatient and so remained until her discharge March 27, 1959. During this period defendant had many weekend leaves, some with plaintiff, but generally with friends or her mother. Plaintiff's conduct toward defendant was such during this period that the trial court found it to be cruel and inhuman such as to endanger defendant's life and granted the divorce because of it. This conduct consisted of oral and written requests for a divorce, statements that he no longer loved her, and that she could not again care for the children, as well as preventing her from seeing the children while on leave. Upon her discharge from the Institute March 27, 1959, defendant went to Broomfield, Colorado, a suburb of Denver. She first lived with her sister and family. The authorities at the Mental Health Institute assisted defendant and it was their determination that she should be with her sister and receive her help, rather than return to her former home and environment. She found work as a checker in a supermarket earning $256 per month. She was so employed at the time she returned to Iowa for the trial. While in Colorado she rented a duplex and with her sister's help has furnished it. During this time she was under the care of Dr. William R. Markel, a physician, but not a psychiatrist.

It is the contention of defendant that her mental condition is now such that she can properly take care of the children and that it would be to their best interest.

Of course a normal young mother to whom a divorce has been granted would be awarded custody of children of the ages of seven and eight years. No citation of authority is needed for this proposition. However, that is not the situation that faced the trial court or that now faces us. This young mother has a history of mental disorder for at least a three-year period, both as an inpatient and an outpatient at the Mental Health Institute, and a period of convalescence under a physician's care for approximately 13 months of the 18 months she spent in Colorado.

She has not cared for the children except perhaps for short visits for three years. Her sister-in-law and mother-in-law have been caring for the children during this period. The record indicates they have been reasonably successful under the circumstances. The children's father shows interest in the children and in their care, but not to the extent of helping much financially. He has contributed $350 to $400 a year to a household where his son lives and he eats from one to two meals a day. The psychiatrist testifying for plaintiff gave his opinion defendant has only made a borderline adjustment and from a combination of his answers we reach the conclusion he says it would not be for the best interests of the children or their mother if the children are placed in her custody. Doctor Ginzberg and the physician who cared for defendant in Colorado both are of the opinion defendant can properly care for the children. Doctor Ginzberg says defendant's symptoms are in remission. Plaintiff's psychiatrist examined defendant for a matter of two hours only. His manner of answering questions is indirect to say the least, but he does express an opinion as we read the record that children are better off with persons who are normal. Defendant's psychiatrist on the other hand says defendant is able to care for the children and explains as her reasons, defendant's improvement, her present ability to take care of everyday stress, and her love for the children. She further explains, they, at the Mental Health Institute, have a far greater number of adopted children under care as emotionally disturbed, and points out the support and affection of a devoted mother is a great factor in child development.

Both psychiatrists were aware that defendant's mother and one of her sisters have been in the Mental Health Institute. The mother in the thirties, and the sister in 1955. Neither has returned for further treatment.

The actual custody of the children is now divided. Joan is living with her paternal aunt and Ralph with his paternal grandmother. As mentioned, plaintiff eats some of his meals in the home with Ralph. A great grandmother also lives in the home.

Both psychiatrists testify that strain and stress over a period of time might cause a recurrence requiring further hospitalization of defendant.

■ II. Our duty is to try this case de novo. In doing so we give weight to the findings of the trial court. Andreesen v. Andreesen, 252 Iowa 1152, 1156, 110 N.W.2d 275, 277. In the Andreesen case we point out that statements saying we give much weight to the findings of the trial court are too strong in view of the duty placed on us to review the case de novo.

■ The primary question before us is the custody of the children. That the best interest of the children is the paramount and controlling consideration on this issue is so well settled citation of authority is no longer necessary.

This record shows the mother is in all respects a fit, moral and proper person to have custody of the children, Joan, 8, and Ralph, 7, at the time of the trial, unless her mental health is such that the children would thereby be affected. Plaintiff's psychiatrist states defendant has made a borderline adjustment, and in effect that care of children by a person mentally ill tends to make the children mentally ill. Doctor Ginzberg, a psychiatrist, states defendant's symptoms are in remission. In explanation of the term "remission" Doctor Ginzberg states,

"We call it remission when the symptoms are absent. For instance, you have an ulcer. You go around with your pain and all that, and then it is all right. You get it treated and it is healed, and so we say the ulcer is in remission. Maybe in two months or a year or three years we tell you the ulcer is in remission. In remission, we would say, lack of symptoms. When we don't use the word 'cure' we use the word 'remission'."

The doctor who cared for defendant in Colorado says her condition is such she can properly care for the children. Both psychiatrists agree defendant is not violent nor likely to become so. The record does not bear out a finding defendant is presently suffering from mental disease, even though she is taking some medication, to the extent it would disturb her everyday handling of the children. In this regard we have examined closely Andreesen v. Andreesen, supra; Bowler v. Bowler, 355 Mich. 686, 96 N.W.2d 129, 74 A. L. R.2d 1068; Snider v. Snider, 302 S.W.2d 621 (Ky. 1957); Dawson v. Dawson, 241 S.W.2d 725 (Mo. App. 1951); and the annotation at 74 A. L. R.2d 1073, urged for our consideration by plaintiff. In each of the cited cases and those annotated, where a mentally ill mother was de-

prived of custody, symptoms of mental illness were much in evidence at the time of trial. In each case the evidence of present mental illness was substantial, coupled with either the probability of physical harm or mental distress to the children. The facts in this case show the measurable improvement, even perhaps recovery, suggested in Bowler v. Bowler, supra, as a basis for return of custody to one who has been mentally ill, and approaches the degree of recovery in Wood v. Wood, 220 Iowa 441, 262 N.W. 773.

In the custody of the father, the children are actually separated. Joan lives with an aunt, 35, and an uncle, 60. Ralph lives with a grandmother, 62 years old, and a great grandmother, 88. A brother and sister should not be separated and lose the benefit of constant association with one another except where the circumstances require it. 27B C. J. S., Divorce, section 308e, pages 448, 449; 17A Am. Jur., Divorce and Separation, section 818, page 14; and see Voy v. Voy, 241 Iowa 673, 676, 41 N.W.2d 869; and Bell v. Bell, 240 Iowa 934, 939, 38 N.W.2d 658, 661.

It is not improper to consider the conduct of plaintiff toward defendant during her illness. The question on the divorce is not before us, but the decree finds support in Phillips v. Phillips, 251 Iowa 1310, 104 N.W.2d 832, mental illness, and Brown v. Brown, 248 Iowa 802, 82 N.W.2d 661, physical illness. Plaintiff's actions and attitude toward a hospitalized wife for either physical or mental illness have some bearing on the type of person he is.

Though it is probably true there is no ideal situation for these children, as mentioned by the trial court, their interest will be best served by placing them in the custody of their mother where the responsibility for their well-being and discipline will be in one person and each will be subject to the same discipline as well as receive the benefits of association with each other.

Nothing said herein is meant in any way to be critical of the generous efforts of the aunt and grandmother on behalf of the children. We commend the generous spirit in which each performed the duties placed on them and we are not unmindful that each is more than willing to continue. In fairness to them and the children, the custody of the children should now be placed in the mother. In this way the children will not only

have a normal relationship with their mother, but a normal relationship with their aunt and grandmother as well.

III. Paragraphs three and four of the decree and judgment in the trial court are hereby deleted. In lieu thereof it is now provided that defendant, Doris E. McKay, is granted full and complete custody of the children, Joan McKay and Ralph McKay, subject to the right of plaintiff, James S. McKay, to have the children with him on the third weekend each month from 5 p.m. on Friday until 8 p.m. on Sunday, at which time plaintiff will return the children to the home of defendant. And plaintiff is further granted the right to have the children with him for a four-week period during summer vacation, to be determined by the parties.

Doris E. McKay is hereby granted the use and occupancy of the residence owned by the parties and located at and known as 1326 First Avenue South, in Estherville, Iowa. (The legal description to this property does not appear of record.) Plaintiff is ordered to pay the mortgage payments due on this residence property promptly as they become due. Defendant shall pay the insurance, taxes, and upkeep on this property. This property is not subject to partition by plaintiff or his successor in interest for a period of ten years from the effective date hereof. All mortgage payments, alimony and child support herein provided are made a lien on plaintiff's interest in this residence property.

Plaintiff is ordered to pay to defendant the sum of $30 per month for each of the two children, a total of $60 a month, to be continued during the minority of each of the children, unless sooner married or self-supporting. And plaintiff is to pay to defendant, as alimony, the sum of $30 per month to continue for a period of ten years unless defendant is sooner deceased or remarried, in either of which events such payments are to terminate.

Defendant is awarded, as her own separate property, all of the household goods, furniture and furnishings, including kitchen and laundry appliances owned by the parties, this includes all such property located at the above residence and all such property located elsewhere.

The mortgage payments required to be made by plaintiff are to be made promptly as provided in the note and mortgage. The child-support and alimony payments are to be made through the office of the clerk of the Emmet County District Court monthly in advance.

The occupancy of the residence, possession of personal property, and the custody of the children provisions shall become effective thirty days after the issuance of the procedendo herein, and on the same date the first payments of alimony and child support shall become due.

The trial court is directed to enter a decree containing the provisions above set forth and providing for the entry of judgment against plaintiff for the amounts required to be paid by him as they become due.

IV. Defendant's application for attorney fees is sustained. All costs in this court are taxed to plaintiff, and defendant is awarded attorney fees to apply on the fees of her attorneys in this court in the sum of $500, to be taxed as part of the costs.

The decree of the trial court is reversed and modified as to custody, property rights and alimony as provided in Divisions II and III, and remanded with directions.—Modified and reversed in part, and remanded with directions.

All JUSTICES concur except MOORE, J., not sitting.