# IN THE COURT OF APPEALS OF IOWA

No. 21-0418
Filed October 20, 2021

**JESSICA K. KETTLER,**
        Petitioner-Appellee,

**vs.**

**BRANDON B. KETTLER,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Dallas County, Thomas P. Murphy, Judge.

Brandon Kettler appeals from the ruling on his petition to modify provisions of the decree that dissolved his marriage to Jessica Kettler. **AFFIRMED AS MODIFIED.**

Tammy Westhoff Gentry and Natalie Hedberg of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer L.L.P., Des Moines, for appellant.

Anjela A. Shutts and Jennifer B. Chavez-Rivera of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

Heard by Mullins, P.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

This case involves a request to modify a Kansas divorce decree that includes unusual visitation provisions. As the unusual circumstances of this case justify the unusual visitation provisions, we leave those provisions largely intact.

Brandon Kettler filed this action seeking to modify the Kansas decree that dissolved his marriage to Jessica Kettler.[1] Jessica filed an answer and counterclaim asking the court to deny Brandon's request and approve her requested changes to other terms of the decree. The district court generally denied Brandon's request and granted Jessica's. Brandon appeals, asserting: (1) his visitation with the parties' children should increase; (2) he should remain responsible for the children's health insurance; (3) his obligations to undergo drug screens and to provide drug test results and mental-health reports to Jessica should terminate after a specified time; and (4) Jessica should not be allowed to suspend his visitation without seeking court approval. Both parties request appellate attorney fees. Except for one minor modification, we affirm. We deny the requests for appellate attorney fees.

I. **Background Facts and Proceedings**

Brandon and Jessica married in 2009. Their marriage produced two children, born in 2011 and 2015. The parties divorced in Kansas in August 2016. To resolve their dissolution action, the parties entered into an agreement for the distribution of marital property and setting terms for the continued parenting of their

---

[1] Brandon's petition identified Jessica by her maiden name. Uncontroverted testimony at trial established Jessica has not returned to her maiden name, so her name remains Jessica K. Kettler.

children.  Their dissolution decree contains no findings of fact, presumably due to the agreement that settled their case.

Under the parties' initial joint parenting plan,[2] the parties have joint legal custody of the children with Jessica having physical care.  The plan provided for supervised visitation for Brandon that gradually increased to unsupervised visitation on the current schedule.  The current schedule allows Brandon visitation on alternating weekends from 10:30 a.m. Saturday until 4:00 p.m. Sunday, with additional holiday visitation.  The plan also required Brandon to maintain health insurance for the children, and it contained provisions about drug use and testing:

> Both Parents are to provide a safe, stable, kind and loving environment for the children at all times.  Other considerations: Father and/or Mother shall not consume prescription medications other than those prescribed to them by licensed medical professionals, in the prescribed dosages.
> For the next 5 years (through July 1, 2021), Father agrees to provide the appropriate releases to any treating psychiatrist and/or therapist and Father's pain clinic so that Mother may obtain quarterly updates about Father's current prescribed medications, treatment plan, prognosis and opinions about Father's ability to interact with the children.
> Father shall submit to up to one random drug test per month for up to 3 years (through July 1, 2019), if Mother requests, the purpose of said test to determine that Father is taking only his prescribed medications in the prescribed dosages.  For the time period beginning July 1, 2019 and ending July 1, 2020, Father shall submit to one random drug test, if Mother requests.  Father shall report for the test within 12 hours of receiving the request.  Father shall provide to the drug testing facility all of the information necessary for them to make this evaluation.  If the drug test is clean, Mother shall be responsible for the cost of the test.  If Father fails the drug test, he shall be responsible for the cost of the test.
> Any failed drug test will result in the immediate suspension of Father's parenting time, until such time that Father is in compliance for a period of two months, at which time parenting time will be reinstated within the following two weeks.

---

[2] Both parties were represented by counsel in reaching their settlement, which included agreeing to the joint parenting plan.

Jessica and the children moved from Kansas to Waukee, Iowa, in 2017. Brandon and his new wife moved from Kansas to Urbandale, Iowa, in 2018. Shortly after moving to Iowa, Brandon registered the Kansas dissolution decree in Iowa and then petitioned to modify the decree, seeking to increase his visitation and modify other provisions.

Evidence submitted at the modification trial established that Brandon has several mental-health disorders as well as ongoing pain management issues. Brandon takes multiple prescription medications as a result. As mentioned, the parties' stipulated decree provided for drug testing. The evidence established Brandon undergoes urinalysis drug testing during random appointments with his pain management doctor. Brandon has taken two more urinalysis tests at Jessica's request since the entry of the Kansas decree. Jessica twice requested Brandon to undergo a hair follicle test because it examines a longer usage window than urinalysis, but Brandon refused both times. All tests to which Brandon submitted were negative for all substances other than prescribed medications.[3]

Fifteen months into the modification proceeding, Jessica filed a motion for emergency suspension of Brandon's parenting time, pointing to recent police reports documenting police response to domestic disturbances between Brandon and his new wife at their home. The court initially granted the motion and suspended Brandon's visitation, which was the first suspension of his visitation

---

[3] Brandon provided results from drug tests collected: January 14, 2016; February 18, 2016; April 12, 2016; September 15, 2016; December 29, 2017; May 3, 2018; December 12, 2018; November 13, 2019; June 5, 2020; and November 20, 2020. The four most recent tests did not screen for marijuana or related substances.

since the dissolution.  After a hearing, the court rescinded its initial order, denied the motion for emergency suspension, and ordered Brandon to submit to a hair follicle drug test.  Brandon provided a hair sample as ordered, although he failed to provide it within the ten-day deadline imposed by the court.  The test was positive for cannabinoids.  Based on the positive test, Jessica suspended Brandon's visitation.  Brandon later filed an application for contempt, and the court reinstated Brandon's visitation but declined to find Jessica in contempt for suspending visitation.

The matter proceeded to trial over three days in early 2021. The first day and one-half of trial was held in the courtroom, where Brandon, Jessica, and Brandon's new wife testified in person.  The rest of the trial was conducted via videoconference due to COVID-19 pandemic precautions.  During the courtroom portion of trial, the judge warned Brandon multiple times about his behavior disrupting the proceedings.  Following trial, the court issued a ruling denying Brandon's request to increase his visitation.  The ruling switched responsibility for providing health insurance for the children, obligating Jessica to provide it.  The ruling also modified provisions for monitoring Brandon's mental health and substance use.  As for monitoring Brandon's mental health and substance use, the ruling stated:

> Brandon shall . . . [quarterly] provide Jessica with a statement from a licensed health care provider regarding Brandon's fitness to have unsupervised visits with the children.[4]
> . . . Brandon shall submit to one random hair follicle drug test (also referred to as hair stat) per month at Jessica's request for the

---

[4] A later ruling on the parties' motions filed pursuant to Iowa Rule of Civil Procedure 1.904(2) specified this statement must come "from a licensed *mental* health care provider."

purpose of determining Brandon's substance use. Said hair follicle drug test shall be completed within twelve hours of Jessica's written request. Jessica shall insure the request is made so that Brandon may timely comply. Brandon shall provide Jessica an ongoing waiver so that she can obtain the test results from the testing facility immediately upon the results' availability. If the tests come back positive, Brandon shall pay all test costs. If the tests come back negative, Jessica shall pay for the negative test costs, except that Brandon shall pay for test costs for three months following a positive test. A positive test is one which demonstrates that Brandon is misusing prescription drugs or using illegal drugs or substances.

. . . [I]f Brandon takes a hair follicle drug test that is positive, immediate suspension of his parenting time shall occur until such time that Brandon is complying with no drug use for a period of three months. Brandon's compliance shall be demonstrated by consecutive monthly hair follicle testing. His parenting time shall be reinstated within two weeks of the third consecutive monthly negative test.

Both parties filed motions under Iowa Rule of Civil Procedure 1.904(2), and the court's subsequent order added the following language about drug testing:

Jessica shall be entitled to choose the type of hair follicle drug test and substances tested to ensure that the test indicates any excess prescription medications and any illegal drug use.

If Brandon does not submit to the test within the required time, the results will be deemed positive and Brandon's visitation will be suspended in the same manner as if he failed a test.

Brandon appeals the court's orders.

## II.     Standard of Review

Proceedings to modify a dissolution decree are heard in equity. *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). "Thus, we review the district court's decision de novo." *Id.* "Though we make our own findings of fact, we give weight to the district court's findings." *Id.*

## III.     Analysis

Brandon raises four issues with the modification ruling on appeal. Before addressing each issue individually, we will discuss whether a sufficient change in

circumstances occurred to permit modification of the dissolution decree. To modify custodial terms of a dissolution decree, a substantial change in circumstances must be established. *In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009). A much less extensive change in circumstances is generally required to modify visitation. *Id.* "The parent seeking to modify child visitation provisions of a dissolution decree must establish by a preponderance of evidence that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the children." *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). "A substantial change is not necessary" to modify visitation. *Nicolou v. Clements*, 516 N.W.2d 905, 909 (Iowa Ct. App. 1994).

While the original decree does not describe the circumstances at the time of dissolution, Jessica's testimony and the stipulated decree's drug-testing provisions establish that Brandon's substance abuse was a major concern. The extent of Brandon's mental-health issues at the time of dissolution are less clear, though he acknowledges being depressed at the time.

The record shows Brandon's mental state continues to be a major concern, no matter if substance abuse or mental illness—or possibly both—caused his mental state. Jessica introduced multiple written communications from Brandon that display unreasonable aggression and hostility. Rather than acknowledge the inappropriateness of his words, he testified the communications lack a "context" that would somehow justify his hostility. Jessica also introduced body camera videos from the police response to the domestic disturbances at Brandon's home. These disturbing videos show Brandon's erratic and hostile interactions with

police, including his claims he is the victim in the disturbances despite evidence to the contrary. Moreover, the district court observed Brandon's behavior firsthand and noted his behavior in the modification ruling:

> [A]t trial, Brandon's behavior was erratic. He was disruptive as he sat with his counsel. Brandon was speaking so loudly to his counsel that it interrupted proceedings. Brandon was rocking back in forth in his chair, rolling his eyes, [waving] his arms, raising his hand, and making audible sounds of exasperation. The court warned Brandon about his behavior twice, and came down hard on him a third time. Brandon's interruptive behavior lessened, but it did not stop.
> . . . .
> It appears to the court that Brandon is suffering from substance abuse or mental illness; perhaps both.

(Footnotes omitted.) We place weight on the court's observations at trial. *In re Marriage of Heiar*, 954 N.W2d 464, 469 (Iowa Ct. App. 2020) ("The trial court has the advantage of listening to and observing the parties and witnesses and is in a better position to weigh the credibility of witnesses than the appellate court, which is limited to a written record.").

We see little evidence to support Brandon's claim that he "is in a much healthier place mentally and in regard to his substance abuse issues now than when the dissolution of marriage was entered." If anything, Brandon's mental-health and substance-abuse issues have increased over the past one or two years. Brandon has undergone no substance-abuse treatment. While he passed the occasional drug tests required by his pain management doctor, his refusal to submit to hair follicle testing raises suspicions. Those suspicions were confirmed when the district court ordered Brandon to undergo a hair follicle test with a longer window of detection, and the test was positive for cannabinoids. Brandon claims his pain management doctor recommended cannabinoids, but he does not have a

prescription for such and an individual's use or possession of cannabinoids without a prescription remains illegal in Iowa. *See* Iowa Code § 124E.12 (2019). Furthermore, Brandon has not seen a mental-health therapist and has only treated his mental health through visits with a psychiatrist to manage his medications.

Due to the fact Brandon's mental health and substance abuse continue to be major concerns, and because Brandon has done little to treat these concerns, we do not find a change in circumstances that warrants modifying the dissolution decree to increase Brandon's visitation.[5] However, we do find by a preponderance of the evidence a material change in circumstances—specifically, Brandon's failure to improve his mental health as expected in the decree—to justify the district court's modifications to the terms of the decree regarding drug testing, disclosure of health records, and potential suspension of visitation. These modifications of current provisions of the decree—which include clarifications and extensions of the current provisions—are necessary to ensure the safety of the children. As explained below, we also find a substantial change in circumstances justifying modification of the health insurance provisions.

### A.     Brandon's Visitation

Brandon argues the district court should have granted him more visitation time. The modification ruling continued the visitation schedule from the decree, with Brandon having visitation on alternate weekends.

We agree with the district court that circumstances have not changed such that it is in the children's best interests to increase Brandon's visitation. The

---

[5] If Brandon successfully addresses his mental-health and substance-abuse issues in the future, he may seek modification then.

children are thriving in Jessica's care, and testimony from the older child's therapists suggest more visitation with Brandon would be detrimental to the child.

As to Brandon's claim that, because he gets one overnight of visitation on alternating weekends, there is no reason he should not get a second night on those weekends, we make two observations. First, there is no standard visitation schedule, as each case is unique and visitation is set accordingly. *See Lamansky v. Lamansky*, 207 N.W.2d 768, 771 (Iowa 1973) ("There is no hard and fast rule by which matters of visitation may be arbitrarily settled. Each case involves different parental personalities as well as the individual characteristics of the child. Obviously, the interplay of these factors is never the same, and precedent is of little value in determining what is right in a particular case."); *In re Marriage of Sperry*, No. 03-1375, 2004 WL 793196, at *3 (Iowa Ct. App. Apr. 14, 2004) ("Each family situation is unique, so that we evaluate the visitation provisions on a case-by-case basis."). Here, the parties agreed to the original visitation schedule to account for their unique circumstances—the uniqueness of which is created by Brandon's unmitigated issues. The evidence established those unique circumstances continue to exist, so no change is warranted.

The second observation is related. In modification-of-visitation proceedings, the modification court does not retry the issue of visitation and set a visitation schedule of its liking. Instead, it must stick with the original schedule unless a change in circumstances warranting modification is established. *See Nicolou*, 516 N.W.2d at 909 ("The [c]ourt cannot retry the issue of visitation but must find that there has been a . . . change in circumstances since the entry of the

original order to justify a change in visitation."). The evidence does not establish a need for a change.

For these reasons, we reject Brandon's request to increase his visitation from that ordered in the decree.

**B.      Children's Health Insurance**

The original decree designated Brandon as responsible for providing the children's health insurance. Brandon argues the district court should not have modified this provision to make Jessica responsible for providing the children's health insurance.

Provisions for children's health insurance are modifiable, as they are part of the award of child support. *See In re Marriage of Goodman*, 690 N.W.2d 279, 285 (Iowa 2004). Child support is modifiable upon a showing of a substantial change in circumstances. *In re Marriage of Mihm*, 842 N.W.2d 378, 381 (Iowa 2014) (citing Iowa Code section 598.21C). Both parties have changed jobs since entry of the decree. These job changes were not contemplated in the decree, and they present a change in circumstances sufficient to permit modification on the issue of the children's health insurance.

Both parties can obtain health insurance for the children through their current employers. Regardless of whose insurance is "better," Jessica's insurance is at least adequate. The evidence established Jessica's insurance is less expensive, even after considering a higher deductible. The evidence also established that Brandon uses his procurement of the health insurance to manipulate and control health care decisions for the children, one time delaying a needed surgery for one of the children. In designating Jessica as responsible for

the children's health insurance, the court noted "insurance is a source of conflict between the parties." We agree with the court that conflict is a major issue between the parties, exacerbated by the provision allowing Brandon to control the children's health insurance. This also presents a substantial change in the circumstances, and we agree "conflict will be lessened if Jessica provides insurance for the children." Therefore, we affirm the provision designating Jessica as responsible for providing the children's health insurance.

### C. Drug Testing and Mental-Health Reports

The district court required Brandon to submit to monthly drug testing at Jessica's request and to allow Jessica to access those test results. The court also ordered Brandon to provide Jessica with quarterly reports from a mental-health care provider. Brandon argues the court should have terminated both requirements after he successfully provided one year of positive mental-health reports and negative drug tests.

Both the original decree and the modification ruling require Brandon to submit to drug testing once per month at Jessica's request, although the decree only permitted monthly drug testing for the three years following dissolution plus one more test during the fourth year. Both the decree and modification ruling require Brandon to allow Jessica to monitor his mental-health treatment. However, the decree allowed Jessica expansive access to Brandon's mental-health records for five years after dissolution. The modification ruling tightens this language to protect Brandon's privacy by only requiring Brandon to provide Jessica with limited access to Brandon's medical records and a quarterly conclusive report from a

mental-health professional.[6]  Presumably, the decree provided a time limit for these requirements because it was expected Brandon would improve.  Time has shown he has not.  Therefore, it was appropriate to extend the time for these requirements, and the court's tweaks to the provisions were reasonable, in some respects benefiting Brandon.

Brandon contends the testing and reporting provisions are "punitive," but we see them as being in the children's best interests as they will help ensure the children are safe while Brandon exercises his visitation.  Brandon now has a post-dissolution track record of ongoing mental-health and substance-abuse issues.  We see no indication Brandon will improve so significantly over the next several years such that ongoing mental-health and substance-abuse reporting will no

---

[6] At oral arguments, Brandon's attorney questioned whether the district court tightened Jessica's access to his medical records.  We think it did.  The original decree required Brandon "to provide the appropriate releases to any treating psychiatrist and/or therapist and [Brandon's] pain clinic so that [Jessica] may obtain quarterly updates about [Brandon's] current prescribed medications, treatment plan, prognosis and opinions about [Brandon's] ability to interact with the children."  The district court opined "Brandon should have some therapist patient confidentiality" to allow him to "seek help without Jessica having access to certain mental and substance abuse counselor-oriented professional records."  To that end, the ruling required Brandon to provide quarterly mental-health reports regarding his fitness for visitation and:

> releases/waivers to Jessica for any treating psychiatrist, physician, or other licensed medical provider who provides Brandon prescriptions for medication, or monitors Brandon's use of medication.  The releases/waivers shall be broad enough so that Jessica can obtain from such medical providers information about medications prescribed to Brandon, and his compliance with the medical providers' directives regarding doses of that medication.

We read the court's ruling as allowing Jessica to access Brandon's medical records only to the extent necessary for Jessica to identify Brandon's medications and his compliance with taking the medications as prescribed.  This in combination with the quarterly mental-health reports grants Brandon more privacy than the original decree, which also allowed Jessica to access Brandon's treatment plan and prognosis.

longer be appropriate. Therefore, we affirm the language indefinitely requiring Brandon to submit to drug testing and provide mental-health reports. As mentioned, if Brandon shows ongoing improvement in the future, he can seek modification at that time.

### D. Suspension of Brandon's Visitation

Brandon argues the district court should have required Jessica to seek court approval before she may suspend his visitation for a failed drug test. The original decree incorporating the parties' agreement stated, "Any failed drug test will result in the immediate suspension of [Brandon's] parenting time until such time that [Brandon] is in compliance for a period of two months, at which time parenting time will be reinstated within the following two weeks." Similarly, the modification ruling states, "[I]f Brandon takes a hair follicle drug test that is positive, immediate suspension of his parenting time shall occur until such time that Brandon is complying with no drug use for a period of three months." The modification order largely extends and clarifies Jessica's ability to suspend Brandon's visitation as a result of a failed drug test. We disagree with Brandon characterizing this language as providing Jessica "the authority to unilaterally suspend Brandon's visitation." The modification order sets an objective, defined standard for when Jessica can suspend Brandon's visitation: "if Brandon takes a hair follicle drug test that is positive." Should Jessica suspend Brandon's visitation in the future, Jessica will merely be following the court's order to do so only for the prescribed period following a failed drug test. Jessica has no discretion to suspend Brandon's visitation upon a mere suspicion of drug use or other conduct without first obtaining court approval. This lack of discretion distinguishes the cases relied on by

Brandon. *See Lamansky*, 207 N.W.2d at 771–72 (requiring the district court to set terms of visitation rather than leaving it to the parties); *Willey v. Willey*, 115 N.W.2d 833, 838 (Iowa 1962) (prohibiting decree provision that gives one parent the discretion whether to allow visitation).

We note that since dissolution, Jessica has responsibly exercised the power to request drug testing and to suspend Brandon's visitation. She has not abused this power. Jessica only suspended Brandon's visitation without seeking court approval once, when Brandon failed the court-ordered drug test during this modification action. While Jessica arguably allowed this suspension to continue too long, the modification order now clearly explains when Brandon's visitation resumes after a failed drug test. We trust Jessica will keep acting responsibly and follow the modification ruling should Brandon fail a drug test in the future.

That said, the modification ruling increased the time of Brandon's suspended visitation upon a failed drug test from two months to three months. We see no justifiable reason to increase the suspension time following a positive drug test.

Based on these considerations, we affirm the language allowing Jessica to suspend Brandon's parenting time following a failed drug test without seeking court approval. However, we modify such language as follows: If Brandon takes a hair follicle drug test that is positive, immediate suspension of his parenting time shall occur until such time that Brandon is complying with no drug use for a period of two months. His parenting time shall be reinstated within two weeks of the second consecutive monthly negative test. Brandon remains responsible to pay for test costs for three months following a positive test.

**E.     Appellate Attorney Fees**

Both parties seek appellate attorney fees.  Appellate attorney fees in a dissolution of marriage modification proceeding "are not a matter of right, but rather rest in this court's discretion."  *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005).  The factors we consider include "the needs of the party seeking the award, the ability of the other party to pay, and relative merits of the appeal."  *Id.*

Brandon's income is such that his need for an award of appellate attorney fees is not great.  Brandon has also been largely unsuccessful on appeal.  As a result, we decline to award him appellate attorney fees.

We also decline Jessica's request for appellate attorney fees.  Although she largely succeeded on appeal, her need for a fee award is not great.

**IV.     Conclusion**

We modify the modification ruling to suspend Brandon's parenting time for two months following a positive drug test, as spelled out in more detail in this opinion.  We otherwise affirm the modification ruling and deny the requests for appellate attorney fees.

**AFFIRMED AS MODIFIED.**